(No. 6162.    December 28, 1934.)

In re Contempt Proceedings of E. C. S. BRAINARD.
E. A. OWEN, as President of the Board of Bar Commissioners of the Idaho State Bar, Petitioner.

[39 Pac. (2d) 769.]

Jess Hawley and Dean Driscoll, for Petitioner.

No briefs are filed by the parties.

WERNETTE, J.—These proceedings were instituted by direction of the board of bar commissioners of the state of Idaho, for the purpose of securing an order requiring E. C. S. Brainard to show cause why he should not be punished for contempt of court in that he for several years last past had been practicing law and holding himself out as qualified to practice law in the state, without having been admitted to practice by the Supreme Court of the state of Idaho, and without paying the license fees now prescribed by law for the practice of law.

Defendant Brainard filed an answer to the petition and affidavit, and thereafter a stipulation of facts, signed by Mr. Brainard and the attorneys for the respective parties, was filed, which in detail set forth the activities of Mr. Brainard, which were substantially as charged in the petition and affidavit in support thereof.

The stipulation sets forth, and the defendant thereby admits, the following facts:

"E. C. S. Brainard is a resident of Payette, Payette County, State of Idaho, and has been so for the past twenty years.

"That for five years he was probate judge of said county.

"That he has at various times since the first day of January, 1931, advised persons in matters of estates and has prepared various types of papers and pleadings for the purpose of securing the probating of estates in the Probate Court of Payette County, Idaho; that while he has never set forth his name on any of said papers as an attorney, he has, as a matter of fact, actually done all the legal work in connection with the probating of estates as ordinarily done by an attorney at law; that he has accepted compensa-

tion for his work in connection with the probating of estates; that he has personally appeared in the probate court filing papers in connection with probate matters pending in the Probate Court of Payette County, Idaho; that specific instances of his practice in this regard are as follows:

"That he prepared in 1931 all the legal papers and petitions necessary for Rachel Gauer to probate the estate of Charles A. Gauer, deceased, and did personally file the said papers with the probate court of Payette County, Idaho, and did do all things necessary to secure the probating of said estate; that while he did not actually sign any of the papers as attorney for the administratrix, he did actually prepare the same and did advise the administratrix all through the course of probate proceedings, and for his advice and services in connection with the probate of said estate, did charge and receive the sum of $75.00.

"That in January, 1932, he prepared the papers necessary for L. E. Keeler, the surviving husband of Ora M. Keeler, to procure a decree of record title to community property, and did all things necessary to secure from the Probate Court of Payette County a decree under the provisions of Section 14–114, I. C. A.; that for his services in this connection he was paid the sum of $25.00 by the said L. E. Keeler.

"That he acted similarly in April, 1932, on behalf of C. F. Draper, as surviving husband of Eva E. Draper and did charge for his services the sum of $25.00.

"That beginning in March, 1933, he prepared necessary papers for the probate of the estate of F. W. Griep and received as his compensation therefor the sum of $100.00 for preparation of papers in the said estate and advice in connection with the probate of said estate.

"That he did procure for A. L. McFarland, the surviving husband of Sarah E. McFarland, a decree of record title to the community property under the provisions of Section 14–114, I. C. A., in the Probate Court of Payette County, Idaho, and did charge for his services in said matter the sum of $25.00.

"That he similarly appeared as attorney for E. L. Martin in the matter of securing a decree of record title to the community property of his deceased wife, Eunice M. Martin.

"That in addition to the specific instances above mentioned, the said E. C. S. Brainard has prepared articles of incorporation during the past three years for various corporate organizers for whom he was doing accounting work and that he did not charge a specific fee for preparing articles of incorporation, but did include his charge for said services in his charge as an accountant.

"That at various times during the past three years, the said E. C. S. Brainard has advised persons in connection with probate matters and has prepared various and sundry documents and papers in connection therewith, in addition to those specific instances hereinbefore mentioned and has regularly charged for his said services at the rate of $2.50 per hour for the time actually consumed in the preparation of said documents and papers.

"That all the work he has done in the matter of closing estates and other legal work has been done by reason of the fact that it became necessary to perform this probate work to clear titles in connection with refinancing loans against the property or in connection with obtaining loans upon property; that he did not at any time accept legal employment in probate matters from any person except someone who had already enlisted his services in some business matter generally in connection with the loan.

"That the said E. C. S. Brainard has never been admitted to practice law in any court in the State of Idaho or elsewhere, and during the past three years and at all times covered by this stipulation has not been admitted to practice law in the Supreme Court of the State of Idaho, and has not paid the license fees required and prescribed by law for one engaged in the practice of law."

With these undisputed facts before us, there is but one conclusion to be reached — that the defendant has been actually engaged in practicing law. The particular reason or necessity for having the legal work performed is not a

justification to practice law without being admitted, nor does the fact that Brainard did not sign the papers and pleadings as an attorney alter the situation. The work and services which he rendered to his clients were that of an attorney engaged in the practice and constituted the practice of law, as much so as if he had signed all the pleadings and papers as an attorney. (*In re Eastern Idaho Loan & Trust Co.*, 49 Ida. 280, 288 Pac. 157, 73 A. L. R. 1323; *In re Bailey*, 50 Mont. 365, 146 Pac. 1101, Ann. Cas. 1917B, 1198; *People ex rel. Colorado Bar Assn. v. Taylor*, 56 Colo. 441, 138 Pac. 762; *People ex rel. Colorado Bar Assn. v. Erbaugh*, 42 Colo. 480, 94 Pac. 349.)

Section 3–104 provides:

"If any person shall practice law or hold himself out as qualified to practice law in this state without having been admitted to practice therein by the Supreme Court and without having paid all license fees now or hereafter prescribed by law for the practice of law he is guilty of contempt both in the Supreme Court and district court for the district in which he shall so practice or hold himself out as qualified to practice. Provided, that any person may appear and act in a justice court as representative of any party to a proceeding therein, but shall do so without making a charge or collecting a fee therefor."

The defendant has, without question, violated the plain provisions of this law, and is guilty of contempt of this court. (*In re Eastern Idaho Loan & Trust Co., supra.*)

The constitutionality of this law has not been questioned by the parties. However, one of the justices is of the opinion that the law is unconstitutional and that it is the duty of this court, of its own motion, to consider and pass on this question, even though the same was not raised by the parties. With this position the majority do not agree. Consequently, we do not consider the question of the constitutionality of the law before us for determination and do not pass on the same.

Based upon firm grounds of public policy, this court has ofttimes reiterated that the constitutionality of

an act or statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the case *in which the constitutionality of such statute has been drawn in question.* (*Kimbley v. Adair,* 32 Ida. 790, 189 Pac. 53; *Abrams v. Jones,* 35 Ida. 532, 207 Pac. 724; *Knoor v. Reineke,* 38 Ida. 658, 224 Pac. 84; *State v. Ridenbaugh,* 5 Ida. 710, 51 Pac. 750; *Howell v. Board of Commrs.,* 6 Ida. 154, 53 Pac. 542; *State v. Baker,* 6 Ida. 496, 56 Pac. 81; *In re Marshall,* 6 Ida. 516, 56 Pac. 470; *McGinness v. Davis,* 7 Ida. 665, 65 Pac. 364; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *Mills Novelty Co. v. Dunbar,* 11 Ida. 671, 83 Pac. 932; *Howard v. Grimes Pass Placer Min. Co.,* 21 Ida. 12, 120 Pac. 170, Ann. Cas. 1913C, 284.)

In Cooley's Constitutional Limitations, 8th ed., vol. 1, p. 340, it is said: ''The statute is assumed to be valid, until someone complains whose rights it invades. *'Prima facie,* and upon the face of the act itself, nothing will generally appear to show that the act is not valid; *and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property, or his rights, that the objection of unconstitutionality can be* presented and sustained. (Italics ours.) Respect for the legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows as a necessary legal inference from this position that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only is it necessary to go in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called on to interpose.' '' Citing many authorities to support the text.

On page 371 of the same volume, we find the following quotation: ''It has been said by an eminent jurist, *that when courts are called upon to pronounce the invalidity of an act* of legislation (Italics ours), passed with all the forms and

ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.''

Speaking of the presumption in favor of validity of the act, the court, in *Re Wellington et al., Petitioners,* 16 Pick. (Mass.) 87, 26 Am. Dec. 631, Chief Justice Shaw, speaking for the court, said: ''And this presumption must prevail in favor of the validity of the act until the contrary is shown, *and shown, too, by a person having an interest in the maintenance of the rights supposed to be thus injuriously affected, and having a right to call for the interposition of the court for their support and protection. . . . . ''* (Italics ours.)

In *U. S. Bldg. & Loan Assn. v. McClelland,* 95 Colo. 292, 36 Pac. (2d) 164, where the constitutionality of an act was called in question, the court said: ''Where someone claims to have suffered . . . . raises the question, it will be time for us to deal with it.'' (*Boyer Bros. v. Board of County Commrs.,* 87 Colo. 275, 284, 288 Pac. 408, 412; *Cavanaugh v. People,* 61 Colo. 292, 294, 157 Pac. 200, 201; *Newman v. People,* 23 Colo. 300, 311, 313, 47 Pac. 278, 280, 283; *Airy v. People,* 21 Colo. 144, 155, 40 Pac. 362, 366; 6 R. C. L., sec. 74, p. 76; 12 C. J., sec. 212, p. 780.)

In 12 C. J., sec. 216, p. 785, it is stated: ''A statute will not be declared void unless its invalidity is distinctly pointed out and clearly shown, and therefore one who alleges that a statute is unconstitutional must point out the specific constitutional provision that is violated by it.'' (See, also, sec. 215, p. 784.)

According to these well-defined principles of law, no one has the right to question the constitutionality of an act, unless he is injuriously affected thereby, and then only when such party has properly challenged the law.

We understand that the defendant has been an honored and respected citizen of his community for many years—a man of good character and regarded as a law-abiding citizen. Although the record discloses that he has acted as probate judge of his county for a period of five years, and must have known that his conduct was wrongful, yet his misdeeds have not been of a vicious or flagrant type. Were it not for these facts and circumstances, defendant would be deserving of more severe punishment than we are inflicting, which we believe meets the ends of justice in this particular case. People who feel inclined to violate this law must be impressed with the fact that this is a wholesome law enacted not only for the protection and benefit of the immediate parties, but principally for the protection of the general public, and must be obeyed, or they that violate must suffer the consequences.

It is therefore ordered and adjudged that for such contempt defendant pay a fine of $250, to be paid to the clerk of this court on or before thirty days from the date of filing of this opinion. In the event of his failure to pay such fine, the said E. C. S. Brainard stands committed to the county jail of Payette county, Idaho, at the rate of $2 per day until the same be paid.

Budge, C. J., and Givens and Holden, JJ., concur.

Morgan, J., dissents.