## No. 14,066.

PEOPLE EX REL. ATTORNEY GENERAL *v.* WICKS.

(74 P. [2d] 665)

Decided October 4, 1937.

Mr. BYRON G. ROGERS, Attorney General, Mr. WALTER F. SCHERER, Assistant, for petitioner.

Mr. P. G. WICKS, pro se.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The information and petition filed in this court by the attorney general against P. G. Wicks charges "that contrary to the law of the state of Colorado he advertises and represents himself to the public as having the authority to practice law and as having the authority to perform the functions of an attorney at law and act in a legal capacity," in that he caused to be inserted twice in the Monitor, a weekly newspaper published in the City and County of Denver and state of Colorado, under the caption "Business and Professional Directory," and under the subcaption of "Notary" an advertisement in words and figures as follows: "P. G. Wicks legal papers made. Highlands P. O. Bldg. 2945 Zuni St.," and further, in that he caused to be painted a sign which he displayed and maintained in the window of his office at 2945 Zuni street in view of the general public, which among other things contained the words "Legal papers made," and under said caption enumerated the following: "Deeds, trust deeds, mortgages, chattel mortgages, releases, extensions, affidavits, contracts and wills."

Petitioner prays that Wicks be required to show cause "why he should not be punished for contempt for engaging in the practice of law in the state of Colorado, and for advertising and holding himself out as having the authority to perform the functions and duties of an attorney at law and act in a legal capacity."

Upon order to show cause why he should not be punished as prayed, respondent answered, admitting the publication and the painting and displaying of the sign as charged, but denying that he ever practiced law within the state of Colorado or held himself out to be a lawyer, or ever allowed anyone to believe he was a licensed attorney, or ever advertised that he was a lawyer, or had the intention of causing anyone to believe

that he was licensed as an attorney at law. He alleges that he discontinued the publication, and withdrew the sign from his office window before this action was commenced, as he had been advised by a friend "that it might be construed as an effort to infringe upon the rights of the legal profession." Respondent further alleges that he "believed that the typing of certain legal papers was a part of his official duties, that he was expected to do same, and that the authority to do same was conveyed to him by his commission" as a notary. He denies any intent to violate the law or rules of the court and states that he will submit to any ruling which the court may make.

Section 6022, C. L. 1921 ('35 C. S. A., c. 113, §2) confers upon notaries public certain powers enumerated therein. Specifically it states that they may make "declarations and protests." Section 7960 C. L. 1921 ('35 C. S. A., c. 115, §3), provides that they may "take affidavits and depositions concerning any matter or thing, process or proceeding pending or to be commenced in any court or before any justice of the peace, or on any occasion wherein such affidavit or deposition is authorized or required by law to be taken." Such affidavits and depositions, when made, are legal papers and the taking of some of them has been recognized as the function of a notary public from the earliest times. Proffatt on Notaries (2d ed.) section 19. For the reasons stated in *People v. Kimsey,* 101 Colo. 392, 74 P. (2d) 663, we think the advertisement, "legal papers made," is not sufficient nor indeed any proof that the respondent intended to exceed his authority in the making of legal papers other than those which he was authorized by statute to make. Those reading his advertisement should not, and we cannot assume that they did, understand that respondent intended to usurp the functions of an attorney by making legal documents—other than those he was authorized by law to make—as a practice or business.

It remains to be determined whether the displaying of the sign in the window of the respondent's office containing the matter above quoted, constitutes contempt of court.

The attorney general discusses three propositions which he says arise out of the admitted facts: "I. Does the drawing of deeds, trust deeds, mortgages, chattel mortgages, releases, extensions, contracts, and wills, as a business, constitute the practice of law? II. If the drawing of such papers does constitute the practice of law, can one not licensed by this court as an attorney at law perform or by advertisement offer to the general public to perform the functions of an attorney at law? III. Does a notarial commission authorize or empower its holder to draw legal instruments?"

The first proposition, if involved in the case at all, is not such as to form a basis upon which it may be adjudged that respondent is guilty of contempt, for it is not charged and does not appear, that respondent ever drew a single one of the enumerated instruments the drawing of which as a business it is contended constitutes the practice of law. We may assume, but need not decide, since it is not involved in the case, that in the abstract an affirmative answer is correct.

The second proposition of the attorney general is that the offering by a person, not licensed to practice law, to do an act or acts which when performed by an attorney constitute the practice of law, is, regardless of intent and regardless of whether the act or acts are done, a contempt of court. Since contempt of court, as pointed out in *People v. Kimsey, supra,* is in the nature of a crime, and was so considered at common law, it is advisable to consider what the legislature has said on the subject. Section 6017, C. L. 1921 ('35, C. S. A., c. 14, §21), is as follows: "Any person who shall, without having a license from the supreme court of this state so to do, advertise, represent or hold himself out in any manner as an attorney, attorney at law, or counselor at

law, or who shall appear in any court of record in this state to conduct a suit, action, proceeding, or cause for another person, shall be deemed guilty of contempt of the supreme court of this state and of the court in which said person shall so appear and shall be punished therefor according to law; provided, that nothing herein contained shall prevent the special admission of counselors, residing in other states, as provided in the next succeeding section of this chapter.''

It will be observed that the gist of the offense against which the statute is directed is one not licensed as an attorney holding himself out in any manner as being licensed, or committing the overt act of appearing in a court of record to conduct legal proceedings for another. The Supreme Court has power to license attorneys, and its action in so doing gives to those licensed a certain status and confers upon them certain prerogatives as officers of the court which all must recognize. For one to assert the possession of a status which only the court can grant, and which has not been granted him, clearly is a trespass upon the court's jurisdiction and an affront to its dignity and authority. It is equally clear that it is such a trespass for one not licensed or lawfully authorized to assume to direct proceedings in the Supreme Court, or in any court the proceedings of which the Supreme Court may be called upon directly to review. As to such matters, the court is directly interested in a person's competency to deal with them. As a matter of public policy the legislature has recognized the right of the court to protect its authority and dignity to this extent. Without determining whether the court in all cases is limited to taking cognizance of acts as contempt only if they fall within the statute, we think this is not a case of such character as indicates any necessity for our doing so. We shall consider it in the light of the statute alone.

The record does not justify even an inference that respondent sought to create in the mind of anyone that

402

he was a licensed attorney at law. It does not contain a suggestion that he ever drew a single legal paper where his acts were not within the limits of the power conferred upon him by virtue of his notarial office. He may have believed he had the right to draw others; he may have intended to so do; he may have done so. He is not answerable under the charge for his belief, his intent, or for an overt act. He is not amenable to discipline under the statute for his belief or his intent alone, and even if so for an overt act, that is neither charged nor admitted.

We need not determine whether the drawing of legal papers enumerated is within the limits of the official powers of a notary, which is the issue sought to be raised by the third proposition, because no such papers are charged to have been drawn.

In conclusion we may observe that it is one thing for a layman to offer to do that which the law says he may not do, but not in fact doing it; and quite another to hold one's self out as *authorized by the court* to do certain things which with such authority one lawfully may do, but without which he may not do. The first is but an expression of the willingness of a layman to violate the law. In such case the court may well await the overt act contemplated by the statute before taking cognizance of the situation. The second involves a false representation as to an existing fact calculated to deceive, and if acted upon by reason of the deception, to cause damage to the one who relies on it, in which situation there is or may be stirred up unmerited censure and criticism of the court. Such a situation is not here presented.

The rule to show cause is discharged.

MR. CHIEF JUSTICE BURKE dissents.

MR. JUSTICE BOUCK and MR. JUSTICE BAKKE not participating.