196 So. 733

### BESSEMER BAR ASS'N v. FITZPATRICK.

6 Div. 678, 679.

Supreme Court of Alabama.

June 6, 1940.

Horace C. Wilkinson, of Birmingham, for petitioner.

Gardner Goodwyn, of Bessemer, pro se.

THOMAS, Justice.

On the 20th day of March, 1940, the Bessemer Bar Association presented a sworn information to the Honorable Gardner F. Goodwyn, Judge of the Circuit Court, Tenth Judicial Circuit of Alabama, Bessemer Division, in which W. D. Fitzpatrick was accused of separate and several contempts of that court by engaging in the unlawful practice of law. In the information it was charged that Fitzpatrick, not a regular licensed lawyer, appeared in a representative capacity for several different people, who are named, in different counts of the information, in the Municipal Court of Bessemer, as an advocate for the parties named. In other counts of the information it was charged that Fitzpatrick appeared in a representative capacity and performed an act in connection with a proceeding pending in said court. These acts are enumerated in different counts of the information, and consisted of requests for continuances of cases, requests that cases be nol prossed or dismissed; a request for a reduction of a bond; and a request that charges be reduced from a misdemeanor to an attempt to commit a misdemeanor; etc.

The information prayed the court to issue a citation to Fitzpatrick, commanding him to appear before the court on such day and date as the court might fix, and then and there to show cause, if any he had, why he should not be adjudged in contempt of court.

The circuit judge took the petition and application for a rule nisi under advisement and later entered an order in which he denied the application for a rule nisi and dismissed the petition. Birmingham Bar Association v. Phillips & Marsh et al., ante, p. 650, 196 So. 725.

The Bessemer Bar Association filed an appeal bond. The appeal is not considered. The appeal is accompanied by a petition on behalf of the Bessemer Bar Association for a mandamus to the presiding judge commanding him to hear the petition and set aside his ruling, or for this court to cite Fitzpatrick to show cause why he should not be adjudged in contempt of this court.

The application for mandamus is here considered on the information filed in and denied by the circuit court, which discloses a flagrant violation of the statutes of Alabama by the one who is sought to be made a party defendant to the petition in the circuit court, and sought a modification of expressions contained in Birmingham Bar Association v. Phillips & Marsh, Inc. et al., supra.

Statutes providing a penalty for the practice of law without a license are cumulative and do not deprive the court of its inherent power to punish for unauthorized practice by contempt proceedings in such courts that have jurisdiction in the matter. Clark v. Reardon, 231 Mo. App. 666, 104 S.W.2d 407.

It is well settled in other jurisdictions that a contempt proceeding may be initiated by a Bar Association to prevent the unlawful practice of the law. In re Brainard, 55 Idaho 153, 39 P.2d 769; In re McCallum, 186 Wash. 312, 57 P.2d 1259; In re Szendy, 244 App.Div. 49, 278 N.Y.

S. 199; Clark v. Reardon, supra; Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; People v. Wicks, 101 Colo. 397, 74 P.2d 665.

■ And it is declared that the unlawful practice before a justice of the peace is a contempt of the circuit court and of the Supreme Court. 7 Corpus Juris Secundum, Attorney and Client, page 726, § 16; Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671.

In the case of Re William T. Morse, 98 Vt. 85, 126 A. 550, 551, 36 A.L.R. 527, 530–533, it was said:

"Proceedings for contempt are of two classes, criminal and civil. While an examination of the authorities shows that the line of demarkation between the two classes is often shadowy, and does not run true, and that the learning on the question abounds with fine and superfine distinctions, the distinction supported by the weight of authorities, and which we believe to be the correct one, is that a criminal contempt is one committed directly against the authority of the court, tending to impede or interrupt its proceedings or lessen its dignity, while a civil contempt is one which operates mainly to deprive another party to a suit of some right, benefit, or remedy to which he is entitled under an order of the court. * * * In the latter case [Hurley v. Com., 188 Mass. 443, 74 N.E. 677, 3 Ann.Cas. 757], the court, referring to criminal contempt, said: 'The punishment of such an offense is solely for the vindication of public authority and the majesty of the law.' Since criminal contempt is directed against the power and dignity of the court, private parties have little, if any, immediate interest in the proceedings for its punishment. Such is the nature of the case before us.

"There would seem to be no doubt on the facts reported but that the respondent acted, and held himself out, as an attorney. Indeed, he in effect admits as much by his explanation of the meaning of the scrawl which he used. It 'indicated and meant,' says he, acting attorney or acting as attorney. And it appears that he so acted, not in a single instance, or occasionally, but in many instances, apparently every opportunity he had, covering a considerable period of time. To the extent of his ability he was practicing law in the justice courts of this state in every sense of the word, 'acting as' attorney regularly in those courts, using the title of attorney in some instances, as we have seen, without any qualification, and in others with a claimed qualification which the commissioner disposes of by merely stating respondent's claim concerning it without any finding either way.

\* \* \* \* \* \*

"It is claimed, too, that since the respondent's operations were confined to the justice courts he is not amenable to this court. But we think that if he is answerable anywhere, for the offense charged, it is to this court. He is not charged with violating a mandate of the inferior court or with misbehavior in that court, but rather with intruding into an office of this court, pretending to act under the authority and with the sanction of this court.

\* \* \* \* \* \*

"It is true we have no constitutional or statutory provision on the subject, but none is necessary. Nor is it necessary to search the common law for authority, since such authority is fairly to be implied from the express power conferred upon this court in the matter of licensing attorneys. The rule of constitutional interpretation announced in M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, that that which was reasonably appropriate and relevant to the exercise of a granted power was to be considered as accompanying the grant, has been so universally applied that it suffices merely to state it, and, as there is nothing in the inherent nature of the power to deal with contempt which causes it to be an exception to such rule, there can be no reason for refusing to apply it to that subject. \* \* \* 'What does this implied power embrace? is thus the question. In answering, it must be borne in mind that the power rests simply upon the implication that the right has been given to do that which is essential to the execution of some other and substantive authority expressly conferred. The power is therefore but a force implied to bring into existence the conditions to which constitutional limitations apply. It is a means to an end and not the end itself. Hence it rests solely upon the right of self-preservation to enable the public powers given to be exerted.'

"Mr. Justice Johnson says in Anderson v. Dunn [6 Wheat. 204, 5 L.Ed. 242], supra: 'But if there is one maxim which necessarily rides over all others, in the practical application of government, it is,

that the public functionaries must be left at liberty to exercise the powers which the people have intrusted to them. The interest and dignity of those who created them, require the exertion of the powers indispensable to the attainment of the ends of their creation. * * * On this principle it is, that courts of justice are universally acknowledged to be vested, by their very creation, with the power to impose silence, respect and decorum in their presence, and submission to their lawful mandates, and as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution.'

"That the express legislative grant to this · court of exclusive and full authority to determine who shall practice as attorneys before the courts of this state carries with it the implied power to do whatever may be reasonably necessary to make such grant effective, even to punishing for contempt those pretending to such office, cannot be doubted. * * * "

In People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N.E. 901, 906, it was said: "Respondent also asserts that, while this court has jurisdiction to entertain a proceeding to punish an unlicensed individual for appearing and practicing in this court, it has no such jurisdiction or power over one who has been guilty of unauthorized practice of law by appearing in the trial courts of this state. No doubt each trial court in this state has ample authority to punish as for contempt of that court any person who presumes to appear and act as an attorney in that court without having been licensed by this court. But it does not follow that the jurisdiction of the trial court is exclusive in that respect. While the wrongful act constitutes a contempt of the trial court because of the imposition and fraud upon that court, yet it is also a contempt of this court, and punishable as such, because the wrongdoer has affronted this court by usurping a privilege solely within the power of this court to grant. People v. Czarnecki, No. 8901 [268 Ill. 278, 109 N.E. 14], supra. In a recent case (In re Morse, supra) the Supreme Court of Vermont held that, since it had exclusive power with respect to the admission and licensing of attorneys to practice in that state, it necessarily had the power in an original proceeding to punish an unlicensed person who had acted as an attorney in the justice of the peace courts of that state."

In State v. Barlow, 131 Neb. 294, 268 N.W. 95, 98, it was said: "Defendant further contends that, since the Legislature has, by statute (Comp.St.1929, § 7-101) provided a penalty for the practice of law without a license and has not, by statute, made such practice a contempt, this court is powerless so to do. That an act denounced by statute as a crime may constitute a contempt of the court is beyond question, notwithstanding the offender may be prosecuted under a criminal statute. The question has been before other courts and a like holding has been made in People v. Association of Real Estate Taxpayers (354 Ill. 102, 187 N.E. 823), supra, and in Rhode Island Bar Ass'n v. Automobile Service Ass'n ([55 R.I. 122] 179 A. 139, 100 A.L.R. 226), supra. This court possesses inherent power to protect itself and its officers from any unlawful interference with its functions as a court. This it may do, not only for the purpose of protecting the court and its officers, but in the interest of the public at large to prevent it from being exploited and injured by one unlawfully assuming to act as an officer of the court. There are many instances where persons' rights have been jeopardized and sacrificed because of following the counsel and advice of unlicensed persons, giving or attempting to give legal advice." [Parentheses supplied.]

In Rhode Island Bar Association et al. v. Automobile Service, 55 R.I. 122, 179 A. 139, 143, 100 A.L.R. 226, it is declared:

"This court, by the Constitution, article 10, § 1 and article 12, § 1, of amendments has had imposed upon it the duty of protecting the public in the administration· of justice. If it could not inquire into the legality of the subterfuges, schemes, and devices by means of which unauthorized persons may contrive to circumvent the barriers to their practice of the law, it would be thereby rendered impotent to discharge a great and important part of that duty. As was said in Fitchette v. Taylor [191 Minn. 582, 254 N.W. 910, 911, 94 A.L.R. 356], supra: 'Having the power through disciplinary proceedings to protect the public by preventing attorneys from indulging in the unlawful practice of law * * * it would be anomalous if we had no similar power to protect the public from the illegal practice of law by laymen.' The bar would suffer in such a case, but the people would suffer even more.

\* \* \* \* \* \*

"It is of interest to us here, however, only to illustrate that the bar arose out of a public demand for the exclusion of those who assumed to practice law without adequate qualifications therefor. It is also of importance because it shows beyond question that the duty of excluding unauthorized persons was left to the discretion of the justices.

"This conception of the practice of the law and its control by the court was the one which the English colonists brought with them to this country. Originally, no one questioned the authority of the court over this matter, or sought to limit it merely to the admission of attorneys to practice in court. Admission to the bar meant admission to practice law, and admission to practice law comprehended all the activities of a lawyer in advising and assisting others in all matters of law both in and out of court. The Supreme Judicial Court of Massachusetts has very recently, In re Opinion of the Justices to the Senate [289 Mass. 607] 194 N.E. 313, 317, expressed itself most fully on this point as follows: 'Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These "customary functions of an attorney or counsellor at law" \* \* \* bear an intimate relation to the administration of justice by the courts. No valid distinction, so far as concerns the questions set forth in the order, can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the groundwork for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possi-

bility in mind, and otherwise would hardly be needed.' \* \* \*

"These respondents then are engaged in selling legal advice and assistance in association with a duly licensed member of the bar of this court. Their association with this member does not absolve them from responsibility. We see no difference in their case from that of the respondent in Re Co-operative Law Co. (1910) 198 N.Y. 479, 92 N.E. 15, 16, 32 L.R.A.,N.S., 55, 139 Am.St.Rep. 839, 19 Ann.Cas. 879, where the court says: 'The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence.' \* \* \*

"To safeguard the practice of the law, which touches so intimately the administration of justice, and to promote the welfare of the people, whose ministers we are, this court has ordained certain standards of character and education as a prerequisite to admission to the bar. These standards are high, as indeed they ought to be, and there is constant pressure to elevate them still higher, all to the end that the people may be assured the best possible service in the dispatch of their legal business. None must be permitted to evade these requirements by doing indirectly what they cannot do directly."

In the following cases the persons cited were adjudged guilty of contempt and punished accordingly: In re Morse, 98 Vt. 85, 126 A. 550, 36 A.L.R. 527 (for practicing law without a license); Rhode Island Bar Ass'n v. Auto Service Ass'n, 55 R.I. 122, 179 A. 139, 100 A.L.R. 226 (for acts done in and out of court); People v. Castleman, 88 Colo. 207, 294 P. 535 (for holding himself out as an attorney); Clark v. Reardon, 231 Mo.App. 666, 104 S.W.2d 407 (for acts done out of court); Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977 (for acting as attorney out of court); In re White, 54 Mont. 476, 171 P. 759 (for advertising as an attorney); In re Brainard, 55 Idaho 153, 39 P.2d 769 (for advices in probate matters); In re Szendy, 244 App.Div. 49, 278 N.Y.S. 199 (for representing himself as an attorney).

In the following cases the court refused to punish for contempt because the act complained of was trivial: Appeal of Cichon, 227 Wis. 62, 278 N.W. 1 (for acting as agent or attorney); People v. Wicks, 101 Colo. 397, 74 P.2d 665 (for advertising as an attorney); In re McCallum, 186

Wash. 312, 57 P.2d 1259 (for office practice).

This will illustrate the action of the courts in many well considered jurisdictions on the question before us,—to punish for contempt.

■ We are of the opinion that the circuit court has the inherent power to duly regulate its officers, agents and agencies in the practice of law before that court and in other courts over which it has superior judicial power. We have indicated this in recent decisions. This power exists aside from that contained in the statutes and our recent decisions defining what constitutes the practice of law. We adhere to the decision rendered in Berk v. State ex rel. Thompson, 225 Ala. 324, 142 So. 832, 84 A.L.R. 740, defining the practice of the law in and out of court.

■■ It may be further observed that the appearance in court and the acting as an attorney at law in proceedings in court by one not licensed to practice law is a direct contempt of court by that unlawful intrusion and usurpation of the functions of an officer of the court. It is further established that the judicial action of a court offended against is not subject to review on questions of fact found by the court. Ex parte Wheeler, 231 Ala. 356, 165 So. 74. No such question as here presented was considered in Birmingham Bar Association v. Phillips & Marsh et al., Ala. Sup., 196 So. 725.[1] This decision is not contrary to that in the case of Ex parte Wilkey, 233 Ala. 375, 172 So. 111.

■■ No expression used in the opinion in Birmingham Bar Association v. Phillips & Marsh, Inc. et al., supra, questions the power, authority and duty of a court to promptly deal with such usurper and offender in direct contempt (presented by this pleading) which is a proceeding that is sui generis. 17 C.J. Sec. 71, § 62 et seq. This rule is the corollary to the proposition that in a court where a direct contempt occurs and is sought to be summarily dealt with, the court has a reasonable discretion in dealing with the same. In such a case mandamus to require that court to further proceed in such matter would be awarded under the general supervisory powers of courts for abuse of discretion. 17 C. J. S., Contempt, p. 68, § 57.

In the case of In re Frederick Bugasch, Inc. et al., 175 A. 110, 111, 12 N.J.Misc. 788, is the observation: "While the court is, of course, impressed and concerned with the efforts of all and particularly those of the bar associations, which have for its purposes the vindication and preservation of its powers, for they are wholesome and praiseworthy objectives, nevertheless we are of the opinion that we should not resort to or exercise the inherent, but none the less drastic and extraordinary, power and right of this court to punish, under all circumstances, those who appear to have committed an act or acts which may be construed as being in contempt of court. It is a power that is not and should not be exercised lightly."

■ It follows that the petition for mandamus, under the pleadings before us, is well grounded in law and the writ should be and is granted and awarded to the Honored Circuit Judge to hear and determine the instant petition of the Bessemer Bar Association.

Writ of mandamus awarded.

GARDNER, C. J., and BROWN, FOSTER, KNIGHT, and LIVINGSTON, JJ., concur.

BOULDIN, J., concurs in the result.

BOULDIN, Justice (concurring in part).

Appearance in court and acting in the capacity of an attorney-at-law in court proceedings by one not licensed to practice law is a direct contempt of the court in which he so performs.

In general one court is not authorized to punish for direct contempts to another court, or for contempt in violating the orders of another court. The court where direct contempt occurs proceeds on personal knowledge; his finding of facts in such case are not subject to review. 12 Am.Jur. p. 423, § 48; Ex Parte Wheeler, Judge, 231 Ala. 356, 165 So. 74.

In view of the relation of the practice of law to the administration of justice, the proper functioning of the courts, I concur in the view that appearance and acting as an attorney-at-law in an inferior court is also a contempt of the circuit court having supervisory jurisdiction over the lower court.

One holding himself out to the public as attorney-at-law, inviting business as

---

[1] Ante, p. 650.

such, when he has no license to practice law, is in contempt of the courts generally. Hence, I concur in the view that the circuit court had jurisdiction to deal with the case in hand by contempt proceedings.

However, I do not commit myself to the proposition that the circuit court was without discretion.

He could very well inquire why proceedings were not begun in the court where the direct contempt is charged to have occurred.

The power to punish for contempt, while a necessary power in many cases, is summary, and may be abused as an arbitrary power.

Hence, as matter of policy, the courts exercise caution and a measure of discretion.

Nothing said in Birmingham Bar Ass'n v. Phillips & Marsh et al., Ala.Sup., 196 So. 725,[1] is in conflict with the views here expressed. The writer adheres to the view that the courts should not, by summary contempt proceedings, deal with cases in which laymen, in the conduct of another lawful business, are charged with entering into the legal profession, and usurping the functions and franchises of the attorney-at-law.

Contempt proceedings deal with past or immediately present conduct. Proceedings to oust parties from unlawful usurpation of a franchise, and prevent the future exercise of such functions have a more far-reaching objective.

The policy of our laws is to deal with such cases in the name of the State, by quo warranto.

It is not a matter of vindicating the power of this or other courts; but of sound policy. The great fundamental right of due process of law becomes also involved.

