**HUGHES v. FORT WORTH NAT. BANK.**

No. 14408.

Court of Civil Appeals of Texas.

July 10, 1942.

Rehearing Denied Sept. 11, 1942.

Clark, Craik, Burns & Weddell, of Fort Worth, for appellant.

Culbertson, Morgan, Christopher & Bailey, R. F. Milam, and N. A. Dodge, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

This case involves a question of unauthorized practice of law.

The suit is brought by Hal P. Hughes. In the plaintiff's original petition John W. Myers is named as defendant, but, following proper suggestion of death, plaintiff's first amended petition names as defendant the Fort Worth National Bank, as independent executor of Mr. Meyers' estate.

The independent executor answered by plea in abatement, asserting that plaintiff did not have the capacity to maintain the suit, and that the suit should be dismissed, because the cause of action is based upon acts of plaintiff which constituted the practice of law, within the meaning of Art. 430a, Vernon's Penal Code of Texas, Annotated, and that plaintiff was not a member of the bar regularly admitted and licensed to practice law. There appears in the transcript an instrument, designated as a brief of amici curiae, filed in the trial court by the officers and directors of the Fort Worth Bar Association, in which they allege that plaintiff is not a member of the State Bar of Texas and is not authorized to practice law, and that the rendition of the services described in plaintiff's pleadings was a violation of the penal statute cited, and of Art. 320a—1, Vernon's Ann.Civ.St., and in which they pray that plaintiff's suit be abated and dismissed.

Upon the hearing of the plea in abatement, the only evidence introduced was the original petition filed by plaintiff, and the testimony of plaintiff himself. The trial court sustained the plea and dismissed the suit. Plaintiff appeals.

Since the statute covers three printed pages we shall not quote it, but refer to the text of it as it appears in the publications of our statutes.

Paragraph (a) of Section 2 provides in part that the practice of law includes the performance, in a representative capacity, of any act in connection with proceedings before a court. Under paragraph (b) of the same section, it is practicing law to advise or counsel another as to secular law. Under paragraph (c) one is practicing law who, for a consideration or reward, does any act in a representative capacity in behalf of another tending to obtain the establishment or enforcement of a right.

Plaintiff's original petition was introduced in evidence by defendant. Our Supreme Court, in Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, 729, said: "It is the general rule that the pleadings in a particular case, for the purpose of use as such in that case, are to be regarded as judicial admissions, rather than just ordinary admissions. Texas Law of Evidence, McCormick & Ray, p. 640. It is also the general rule that when a pleading has been abandoned, superseded, or amended, it ceases to be a judicial pleading, and therefore ceases to be a judicial admission. It follows that any admission contained in an abandoned pleading ceases to be binding on the pleader, in the sense that he is prevented from disproving facts alleged therein. Such pleading, however, still remains a statement seriously made, and it can be introduced in evidence as an admission. Texas Law of Evidence, McCormick & Ray, p. 642."

Plaintiff's original petition alleges in substance that a divorce suit was pending between said John W. Myers and his wife Effie Myers; that in order to avoid incurring the expenses, attorney's fees, etc., incident to litigation of the property rights of the parties, said John W. Myers approached plaintiff and made an agreement with plaintiff to the effect that in consideration of plaintiff acting as an intermediary between Myers and his wife in negotiating a property settlement, and in consideration of plaintiff's effecting a property settlement out of court, Myers would pay to plaintiff five per cent of the amount of property involved; that plaintiff did perfect a settlement of the property rights between Myers and his wife; that the agreed value of the property was $119,500; that the settlement was brought about by plaintiff's efforts; and that, to quote from the petition, "That in so perfecting the settlement without a court fight concerning the same, plaintiff performed and discharged his obligations under the said contract and agreement with defendant."

The petition concludes with a prayer for judgment for the sum of $5,975, representing five per cent of the property involved in the divorce suit.

In his amended petition, plaintiff alleges that he acted as a go-between, to carry propositions and counter propositions from one to the other of the parties to the divorce suit.

At the hearing of the plea in abatement, plaintiff testified that he was not admitted or licensed to practice law, but insisted throughout his testimony that he did not practice any law in the performance of the services in question. He said that he stated to his attorneys who drew the original petition that he acted as a go-between, to carry propositions from Myers to his wife, and to bring back counter propositions, and that plaintiff had read neither of the petitions filed by his attorneys. He further testified that Myers had an attorney representing him in the divorce suit, and that the attorney prepared the settlement papers. So far as plaintiff knew, Mrs. Myers, who was the mother of plaintiff's wife, did not have an attorney representing her in the matter. Plaintiff further testified as follows: Mr. Myers left home on the first day of January, 1941, went to the Metropolitan Hotel, in Fort Worth, called plaintiff to his hotel room, and told him that he and Mrs. Myers had separated and that he was not going back. That night Mr. Myers called plaintiff again to his room. After two or three days Myers asked plaintiff to move him to the Westbrook Hotel, which plaintiff did. Myers was not feeling well, and was highly nervous. A day or so later plaintiff took Myers to the office of Myers' lawyer, and the divorce suit was then filed. A day or two later Myers said to Hughes:

"Now you have been good to me, Hughes. You have waited on me heretofore many times. And I want you to act as a go-between, between my wife and I in a property settlement."

Hughes replied to the effect that he would rather not do it, whereupon Myers said:

"That is the reason I want you to go between us. I don't want to get into a court fight. I will list every piece of property I have, and then you can go take it to her and

let her have what she wants to have, so it is divided equally."

Hughes took the proposal to Mrs. Myers, but at that time she did not accept that kind of an agreement. She wanted to get certain stocks and bonds that paid interest. He reported back to Myers. Then Myers set down on two pieces of hotel stationery just how he wanted the property divided. Mrs. Myers would not agree to this proposal, saying that Myers "was holding out on her".

The following is taken verbatim from plaintiff's testimony:

"I said, 'I don't know, but the old gentleman has told me this is everything he had, because I told him I would not attempt to make a settlement between them unless he would list everything that he had; that I was not going to be a party to cheating either one of them or help to cheat them.'"

Numbers of times plaintiff went between them with counter propositions. Finally Mrs. Myers made a proposition which Myers accepted. In addition, plaintiff waited on Mr. Myers two months, day and night, at his request, and the proposition of paying plaintiff five per cent of the estate was Myers' proposition, and not plaintiff's. The negotiations took place during approximately all the month of January. Plaintiff knew that the property was involved in the divorce suit. Plaintiff was not trying to settle the law suit, but was "trying to settle property differences". Plaintiff did not ever give any legal advice. Plaintiff was not present when the suit was tried. He had nothing to do with drawing the settlement agreement or the judgment. Mr. Myers' attorney drew the settlement agreement and so far as plaintiff knows, Mrs. Myers had no lawyer representing her.

We consider that the above is a fair summary of plaintiff's testimony. No other evidence was introduced upon the plea.

The ninth numbered paragraph of plaintiff's amended petition alleges: "That finally said contract was executed by both parties, as a result of the acts of plaintiff, in acting as a go-between the said John W. Myers, deceased, and his then wife Effie B. Myers. That as a result of said actions on the part of plaintiff, in acting as the go-between of said parties, said settlement was made, and neither of said parties, who were old, were required to go through the ordeal of a trial as to the property rights between them."

Elsewhere in the petition it is alleged that Myers desired to have some one act as a go-between who was friendly with both Myers and his wife, and that plaintiff was friendly with both of them. It is also alleged that the making of proposals and counter proposals covered a period of several weeks, and that:

"* * * John W. Myers, now deceased, required and used practically all of the time of the said plaintiff in conveying said propositions from one to the other, until, after negotiating for several weeks by messages and propositions, which the said John W. Myers ordered and directed plaintiff to deliver to the said Effie B. Myers, the wife of said John W. Myers, and the counter propositions of the said Effie B. Myers to the said John W. Myers, finally they agreed upon a division of said properties."

It is further alleged that after Myers' attorney drew the settlement agreement, plaintiff was directed to deliver the contract to Mrs. Myers for her study, approval and signature.

In his order dismissing the suit, the trial court finds that the material allegations of the plea in abatement are established by the evidence.

Much has been written concerning the unauthorized practice of law. Much has been said concerning the necessity and importance to the public of preventing the practice of law by persons not licensed to engage in the law practice. We make especial reference to what is said in the opinions in the following cases. In re Opinion of the Justices, 289 Mass. 607, 194 N.E. 313; Rhode Island Bar Ass'n v. Automobile Service Ass'n, 55 R.I. 122, 179 A. 139, 100 A.L.R. 226; Berk v. State, 225 Ala. 324, 142 So. 832, 84 A.L.R. 740; Bessemer Bar Ass'n v. Fitzpatrick, 239 Ala. 663, 196 So. 733. The Berk case, supra, is particularly interesting in view of the fact that the Alabama statute is very similar to the Texas statute. A comprehensive definition of the term, "practice of law", will be found in 7 C.J.S., Attorney and Client, § 3, p. 703, with citations of many cases illustrating fact situations in which the acts in question were held to be, or not to be, practice of law.

■■ We refer to the exhaustive discussions in the cases cited, and shall not undertake to repeat what is said in them. It is enough to say that the authorities clearly establish that the practice of law is affected

with a public interest, and that it is the right and duty of the state to regulate it and control it so that the public welfare will be served and promoted. Attorneys are officers of the court and are important aids in the administration of justice. The practice of law is not confined to cases conducted in court. In fact, the major portion of the practice of many capable lawyers consists of work done outside of the courts. For centuries it has been recognized that the practice of law can safely be entrusted only to those who have satisfied the standards of academic and legal learning required of members of the legal profession, who have become familiar with the traditional duties and obligations of lawyer to client, who have training and experience enabling them to ascertain the rights of clients and to take the necessary steps to enforce them, and who as sworn officers of the court have become a part and parcel of the judicial department of our government.

As is said in the Rhode Island Bar Association case, supra [55 R.I. 122, 179 A. 146, 100 A.L.R. 226]: "The bar is an important element of our judicial system, and all of its members are obligated to govern their professional conduct in full accord with the solemn responsibility which that entails. Under our system of law the most effective guaranty of equal justice to all in the commonwealth is a competent and learned bar composed of men of high personal character who govern their professional conduct at all times by the well known and generally accepted canons of legal ethics."

It is not necessary to endeavor here to fix a standard for determining what acts do or do not, in any kind of case, constitute the practice of law.

It seems clear to us that the trial court was warranted in finding that the evidence established the material allegations of the plea in abatement, which is to say, that the acts performed by plaintiff constituted the practice of law, within the meaning of the statute. The divorce suit between Mr. and Mrs. Myers involved the settlement of the rights of the parties to property worth more than a hundred thousand dollars. The evidence is amply sufficient to show that plaintiff, for the sizeable fee of some six thousand dollars, represented Mr. Myers in working out a settlement of the property involved in the suit. It is not in accord with reasonableness to think that Mr. Myers agreed to pay plaintiff this large sum of money merely to act as a messenger, or to act in the modest capacity of a personal servant for a comparatively short time. It may be that plaintiff's relationship to the parties was an influential factor in bringing about the employment, but such a relationship was not important to the mere manual delivery of messages from one to the other. To us it is clear that plaintiff agreed to, and actually did, act in a representative capacity in bringing about a settlement of the suit Mr. Myers had pending in court.

The judgment of the trial court has sufficient support in the evidence, and is affirmed.