No. 6964    March 19, 1942)

In re refund of contributions of P. G. BATT under the Unemployment Compensation Law, P. G. BATT, Appellant, v. UNEMPLOYMENT COMPENSATION DIVISION OF INDUSTRIAL ACCIDENT BOARD OF IDAHO, Respondent.

(123 Pac. (2d) 1004)

W. H. Langroise, Sam S. Griffin, Laurence E. Baird for appellant.

Bert H. Miller, Attorney General, Thos. M. Robertson, Jr., and Paul B. Ennis, Assistant Attorneys General, for Respondent.

AILSHIE, J.—A statement of the facts of this case, upon which our decision on the merits of the appeal must rest, is set forth in sufficient detail in the opinion of the Chief Justice ("Concurring in part and dissenting in part") ; and, for that reason, no further statement of facts will be made in this opinion.

In this case, where no one is questioning the jurisdiction of the court, but, on the contrary, every party to the proceeding is invoking the jurisdiction and urging the court to exercise it, the writer feels, as he did in the case of *Hull v. Cartin*, 61 Idaho 578, at 596, 105 Pac. 2d 196, wherein he said:

"Since the question [jurisdictional] was not raised by either party to the litigation and no assignment of error has been specified thereon, it is the opinion of the writer that the question is not properly before us for decision." A like conclusion, on a constitutional question not assigned as error, was reached in *Big Wood Canal Company v. Unemployment C. Div.*, 61 Idaho 247, at 253, 100 Pac. 2d 49, where it is said:

"We have not considered and do not pass upon any jurisdictional question in this case since both appellant and respondent contend that the Industrial Accident Board had the jurisdiction to pass on this matter in the first instance; and that the appellate jurisdiction is vested in this court to review all such orders."

In the matter of In re Brainard, 55 Idaho 153, 157, 39 Pac. 2d 769, this court also said:

"Based upon firm grounds of public policy, this court has ofttimes reiterated that the constitutionality of an act or statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the case *in which the constitutionality of such statute has been drawn in question.*" After citing a long list of cases and quoting from authorities, the court concluded:

"According to these well-defined principles of law, no one has the right to question the constitutionality of an act, unless he is injuriously affected thereby, and then only when such party has properly challenged the law."

To the same effect, see *Garrity v. Board of Commissioners,* 54 Idaho 342, 34 Pac. 2d 949.

For the foregoing reasons, the writer thinks any discussion of the jurisdictional and constitutional questions merely dicta.

As I understand this appeal, the only controversy before us is as to whether the appellant, Batt, is liable for contributions under the Unemployment Compensation Law, upon wages for (a) labor of individuals performed upon farm products purchased by him from farmers; and (b) for the same kind of labor performed on farm products handled on so-called "consignment."

The opinion of the Chief Justice seems to recognize a difference between the work done on (a) *purchased* farm products and (b) *consigned* farm products. I am unable to distinguish any material or legal difference between the two.

The stipulation of facts covering this phase of the question is as follows:

"That aside from the produce raised by the applicant the balance of such produce which are processed as hereinafter set forth are secured in the following ways:

The applicant purchases from the farmer grower the portion of his crop which is marketable when sorted and graded. To enable applicant to determine the part purchased and to prepare the same for market the farmer delivers such produce at the applicant's shed or warehouse, contained in half bags as taken by the farmer directly from the field as harvested.

The applicant also handles a comparatively small part of potatoes on consignment, in which case the farmer delivers the potatoes from the field as harvested, and after the applicant has processed the same as hereinafter stated and sold the same there is deducted from the sale price the expenses, including a charge for processing and a brokerage charge, and the balance is paid to the farmer.

In the case of all produce the culls or other non-marketable produce are owned by and go back to the farmer producer or are disposed of as he directs, and does not go into market."

It is further stipulated that

"Such products are not salable, and there is no market for them without having been processed, graded and packed as hereinafter stated, and they are not salable in bulk to ultimate consumers as or in the condition in which they are harvested in the fields; that the United States government will not purchase said products for distribution on relief unless the same are so processed."

It appears, from the stipulation of facts, and is admitted, that this so-called *processing* merely consists of sorting, washing and grading these several farm products and packing or crating them for shipment and market. It is further stipulated and found as a fact, that the same laborers do the work on both the purchased and the consigned products; and that the work is identical on both.

It is clear that the appellant does, for hire, just such work as the farmer would have to do himself or hire someone else to do, on the farm or elsewhere, in preparation of his products for market. For this labor, the appellant received and deducted from the sale price "the expenses including a charge for processing and a brokerage charge," and paid the balance to the farmer. It further appears that all culls and unsalable portions of the products consigned were returned to the owner, after the so-called processing was completed.

I fail to see wherein the work done upon consigned products is any less "agricultural labor" than that done upon the same kind of products purchased by appellant, or grown by him on his own farm. It was all *agricultural labor*.

The order of the Board should be reversed, both as to the products purchased and those received for processing and consignment, and it is so ordered. The cause is hereby remanded to the Board, with instructions to take further proceedings in accordance with the views herein expressed. Costs awarded to appellant.

Budge, J., concurs.

GIVENS, C.J., concurring in part and dissenting in part.

Appellant has since the effective date of the Unemployment Compensation Law (September 1, 1936, Ch. 12, 3d Ex. Sess., 1935, sec. 7) filed reports and paid under protest the excise tax required by said law in the total amount of $2620.05. On March 19, 1941, appellant filed an application for refund, contending his employes were not covered, because engaged in agricultural labor. From an order of the board denying such application this appeal comes to us on a stipulation summarized as follows.

Appellant owns or is the tenant of between 800 and 900 acres of farm lands, upon which he raises potatoes, onions, lettuce, carrots, and peas. He also owns and operates two so-called processing sheds, not located on the farms. Appellant cleans, grades, and packs at these two sheds all of the produce raised upon his own lands and those rented by him, and in addition purchases from, or handles on consignment, similar produce grown and harvested by others, all of which he sells to track buyers, jobbers, and car lot distributors. Such products are not saleable unless they have been processed, and such processing is necessary by reason of state or federal statutes or regulations or requirements of purchasers. Rejected produce remains the property of the farmer and is returned to him.

The so-called processing operations consist of cleaning, washing, cooling, and sorting the vegetables, and grading, sizing, packing, icing, and loading the marketable portion thereof. No change whatever is made physically or chemically in the substance or structure of the vegetables. The contributions paid were for wages paid the employes engaged in these operations, and two employes engaged in clerical duties, one practically continuously and one part time. The processing operations are seasonable, the labor is unskilled, and the equipment is not specialized. This work is often done by the individual farmer on his own place by contract crews, in which event no tax is charged or collected from the farmer. Growers who do their own processing pay no tax.

The produce harvested on appellant's lands constituted 22½% of the produce processed by appellant at his sheds.

Apellant made contributions to the United States until the end of 1939, when the federal act as amended became effective, and after which no further contributions were required from appellant by the United States on account of the labor aforesaid.

Some former employes received benefit payments based in part upon wage credits earned in the employ of appellant.

The Industrial Accident Board found the services rendered in processing the produce purchased or handled on consignment by appellant were not exempt employment and the wages for such services are subject to the excise tax, except that the services performed in connection with the vegetables raised upon the lands of which appellant is owner or tenant are agricultural labor, that the wages paid for said services are exempt from the excise tax levied, and ordered that 22½% of the taxes paid be refunded. The appellant appealed from that part of the order denying his petition for refund charged against him and paid for labor in processing products not grown or raised by him, i. e., both purchased by him and handled on consignment.

No question of jurisdiction was raised by the parties. The court, however, sua sponte, submitted to counsel in this and other cases presently presented and akin hereto queries as to the jurisdiction of this court of the proceeding herein, dependent in effect upon two uncertainties—first, whether or not the constitutional amendment providing for a direct appeal from the Industrial Accident Board to this court submitted by the legislature (1935 S. L., p. 377) and ratified and approved by the people at the general election of November 3, 1936 (1937 S. L., p. 498), included appeals from the Industrial Accident Board in so-called social security or unemployment compensation cases, as the one herein is; and, second, whether the same includes claims before, and orders made by, the board, as herein, for a refund of taxes paid by the asserted employer under protest, or whether such proceedings are properly and solely cognizable because of Idaho consti-

tution, article 5, sections 2, 13, and 20,[1] by district courts and, within the jurisdictional amount, under sections 21 and 22[2] thereof by probate and justice courts.

Discussions in the briefs by counsel at least suggest these two additional questions: first, whether the legislature intended the statute to cover direct appeals of this kind; and, second, whether, since the board was in effect prosecutor, judge, and jury, a hearing before them, with their findings binding on the courts, would constitute due process.

It is doubtful if either party herein could have (they have not) raised these jurisdictional questions because appellant sought relief under the statute, and respondent has asserted a traverse under the statute. (*Brady v.*

[1] "Sec. 2. Judicial power—Where vested.—The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law for any incorporated city or town."

"Sec. 13. Power of legislature respecting courts.—The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this constitution."

"Sec.20. Jurisdiction of district court.—The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

[2] "Sec. 21. Jurisdiction of probate courts.—The probate courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians; also jurisdiction to hear and determine all civil cases wherein the debt or damage claimed does not exceed the sum of five hundred dollars, exclusive of interest, and concurrent jurisdiction with justices of the peace in criminal cases."

"Sec. 22. Jurisdiction of justices of the peace.—In each county of this state there shall be elected justices of the peace as prescribed by law. Justices of the peace shall have such jurisdiction as may be conferred by law, but they shall not have jurisdiction of any cause wherein the value of the property or the amount in controversy exceeds the sum of three hundred dollars, exclusive of interest, nor where the boundaries or title to any real property shall be called in question."

*Place*, 41 Ida. 747, 242 Pac. 314; *Taylor v. Girard*, 54 Ida. 787, 36 Pac. (2d) 773; *Henderson v. Twin Falls County*, 59 Ida. 97, 80 Pac. (2d) 801.)

All of the parties in their briefs in response to the questionnaire herein take the position that the board has jurisdiction and that the orders made denying refunds were directly appealable.

The court, therefore, in discussing the jurisdictional questions would in a way be shadow-boxing only itself, because there is no real opponent to the views advanced by counsel. It might be better to dispose of such contentions at the threshold of the influx of possibly continually increasing litigation of this kind, rather than to wait until a doubtful rule has, because of indecisive silent acquiescence in or approval thereof, become so intrenched that its eradication would be fraught with difficulty and perhaps with hazards affecting not only procedure but substantive rights resting upon a juristic structure of straw.

However, ordinarily and generally questions not raised by the parties will not be raised by the court (In re Brainard, 55 Ida. 153, 39 Pac. (2d) 769), and constitutional questions will not be determined unless absolutely necessary. (*Howell v. Board of Commissioners*, 6 Ida. 154, 53 Pac. 542; *McGinness v. Davis*, 7 Ida. 665, 65 Pac. 364; *Jack v. Village of Grangeville*, 9 Ida. 291, 74 Pac. 969; *Mills Novelty Co. v. Dunbar*, 11 Ida. 671, 83 Pac. 932; *Kimbley v. Adair*, 32 Ida. 790, 189 Pac. 53; *Logan v. Carter*, 49 Ida. 393, 288 Pac. 424; In re Allmon, 50 Ida. 223, 294 Pac. 528; *Garrity v. Board of County Commissioners*, 54 Ida. 342, 34 Pac. (2d) 949; In re Brainard, supra; *Albrethsen v. State*, 60 Ida. 715, 96 Pac. (2d) 437; *McLean v. Hecla Mining Co.*, (Ida.) 108 Pac. (2d) 299.) Nevertheless, the court has under similar circumstances considered and passed upon such questions. "However, in view of the fact that the court submitted the question to counsel and they have argued it here, we have concluded to consider the question." (*Hull v. Cartin*, 61 Ida. 578, at 596, 105 Pac. (2d) 196.) We will however again, but pointing out the hazards of such course, reserve, as in *Big Wood Canal Co. v. Unemployment Com-*

*pensation Division,* 61 Ida. 247, 100 Pac. (2d) 49, such jurisdictional questions and proceed to the merits of the controversy.

The criterion is whether the legislature intended by the phrase "agricultural labor" to exempt any of the operations carried on herein. The board classified as agricultural labor all the work done by appellant and his employes on produce raised by him, and the appeal does not involve the same, and we need not consider it further. The entire court is of the opinion that the activities of the appellant and his employes on products purchased outright by him from other producers and growers are in the same category, and the order of the board was in this particular incorrect. There remains only for determination the classification of the work done in connection with produce handled by appellant on consignment.

The purpose of the statute as declared by the legislature is to ameliorate conditions of unemployment. (Sec. 2, Ch. 12, 3d Ex. Ses. 1935, p. 21.) The legislature has the right to grant exemptions from taxation. (Art. 7, Sec. 5, Idaho Constitution.) On the other hand, we may take judicial notice that unemployment exists among agricultural labor.

The term "agricultural labor" has been variously and ununiformly defined. It is a more restrictive phrase than agricultural pursuits. (*In re Roby,* 54 Wyo. 439, 93 Pac. (2d) 940.) Exemption from taxation is to be strictly construed against the exemption. (*Bistline v. Bassett,* 47 Ida. 66, at 71, 272 Pac. 696, 62 A. L. R. 323; *Andrews v. North Side Canal Co.,* 52 Ida. 117, at 123, 12 Pac. (2d) 363; *Lewiston Orchards Irr. Dist. v. Gilmore,* 53 Ida. 377, at 383, 23 Pac. (2d) 720.) This rule has been applied to this form of excise tax. (*Big Wood Canal Co. v. Unemployment Compensation Division, supra.*) The trend in a cognate field (workmen's compensation) has been not to enlarge exemptions. (*Gloubitz v. Smeed Brothers,* 53 Ida. 7, 21 Pac. (2d) 78; *Dorrell v. Norida Land & Timber Co.,* 53 Ida. 793, 27 Pac. (2d) 960; *Mundell v. Swedlund,* 59 Ida. 29, 80 Pac. (2d) 13.) The statutory changes and amendments of the unemployment compensation statute,

both federal and state, have been in the same direction.[3] The authorities recognize and make a distinction between labor performed as an agricultural activity, and performed in the commercial or industrial field merely as an adjunct to agriculture. (*Park Floral Co. v. Industrial Commission*, 104 Colo. 350, 91 Pac. (2d) 492; *Wayland v. Kleck*, (Ariz.) 112 Pac. (2d) 207; *Cowiche Growers v. Bates*, (Wash.) 117 Pac. (2d) 624; *H. Duys & Co. v. Tone*, 125 Conn. 300, 5 Atl. (2d) 23; *North Whittier Heights Citrus Ass'n v. National Labor Relations Board*, 109 Fed. (2d) 76.) This thought has been recognized by this court. In *Cook v. Massey*, 38 Ida. 264, 220 Pac. 1088, commercial threshing was considered an agricultural pursuit, because of the historical background, legislative intent and interpretation as gleaned from other statutes, and that grain is not a *finished farm* product until threshed. In *Gloubitz v. Smeed Brothers, supra,* the court followed with approval the restrictive definition in the workmen's compensation statute that an agricultural pursuit was confined to the handling of livestock on the farm

---

[3] "The term 'covered employment' shall not include—

(f) Services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops or the raising, feeding or managing of livestock, bees or poultry, or in connection with the processing, packing or marketing of the produce of such farm where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would otherwise be termed covered employment within the meaning of this Act." [Sec. 18-5, Ch. 182, 1941 Ida. S. L.]

"(1) The term 'agricultural labor' includes all service performed—

(1) on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.

(2) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and

or open ranges, and did not include its delivery as a commercial or industrial activity apart from and unconnected with agricultural pursuits as such. In *Mundell v. Swedlund, supra,* and *Dorrell v. Norida Land & Timber Co., supra,* the court clearly held that it was the general scope of the activity and not the particular thing done which determined the classification.

Any number of activities if carried on in the home or on the farm are agricultural in their nature, whereas if carried on under different conditions, either as to place or extent of the work performed, fall into a different classification. Among others, we may mention and call attention to baking or cooking in the home which are domestic service, where it is done as purveying to the public it partakes of industrial or commercial characteristics; compare butchering, spinning, weaving, sewing, and tailoring, drilling of wells, carpentry in the repair of buildings on a farm, care, repair, and upkeep of farm machinery or machinery generally.

It is urged that a broad, general definition should be

other debris left by a hurricane, if the major part of such service is performed on a farm.

(3) In connection with the production or harvesting of maple sirup or maple sugar or any commodity defined as an agricultural commodity in section 1141j(g) of the Title 12, as amended, or in connection with the raising or harvesting of mushrooms, or in connection with the hatching of poultry, or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes.

(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticulture commodity after its delivery to a terminal market for distribution or consumption.

As used in this subsection, the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards."

given the term (agricultural labor) and that niceties of distinction should not be engaged in because of the consequent difficulty of the employer and the board in determining as to whether the employment falls within one class or the other. In dealing with an administrative board of this kind, however, such almost infinitesimal lines of demarcation cannot be avoided, and again we must recognize that, as has heretofore been stated, each case must be decided more or less upon the peculiar and definitive features involved therein. Illustrations too numerous to even mention readily occur to any one of work which if done in the home would be domestic and exempt, under other circumstances and in a different environment would not be; so with work on or connected with farming.

Courts as courts should not shut their eyes to what they know of the common affairs of business and industry. While the work done by appellant both for himself and others was of an agricultural nature, performed on consigned produce, it partook of the nature of a business in the industrial field, as distinguished from employment which we believe the legislature intended to exempt from the operation of the unemployment compensation statutes, and the board was justified in making the distinction it did as to consigned produce.

The order as to produce purchased should be reversed. Otherwise affirmed.

Holden, J., concurs.

MORGAN, J.—Except in one particular I am in accord with the opinion of Chief Justice Givens in this case. The point on which I am unable to agree with him is as to labor performed upon vegetables received by appellant on consignment. I believe all the labor mentioned in this case, including that on produce consigned to appellant, is "agricultural labor" within the meaning of the unemployment compensation law and is not "covered employment" by reason of which the excise tax should be imposed.

I believe it is our duty to call to the attention of the legal profession that grave doubt exists as to the juris-

diction of this court to entertain appeals in cases of this kind from the Industrial Accident Board, and earnestly hope what the Chief Justice has so well said on this subject will serve as a warning that such appeals may result only in decisions which will have no binding force.

While I am in favor of deciding jurisdictional questions which present themselves to the court, whether urged by the parties or not, and, while I believe that to be not only the majority rule, but the sensible one, I am fully persuaded the manner in which the Chief Justice has handled this question is preferable to ignoring it.