(No. 7214.   March 14, 1945.)

In re Liability of P. G. BATT for Unemployment Compensation excise taxes.

[157 P. (2d) 547.]
Rehearing denied April 16, 1945.

Sam S. Griffin and W. H. Langroise for appellant.

190

Bert H. Miller, former Attorney General; Frank Langley, Attorney General, and Thos. Y. Gwilliam, Assistant Attorney General, for respondent.

BUDGE, J.—Appellant seeks to recover refund of payments made to the Unemployment Compensation Division for unemployment compensation contributions on wages paid for services of persons engaged by him in packing, processing and marketing farm products. For a number of months, in the years 1941, 1942 and 1943, after the effective date of Chap. 182, 1941 Sess. Laws, appellant paid contributions to the State under the Unemployment Compensation Law. Upon appellant's application for refund, a hearing was had before the Industrial Accident Board, as administrator of the Unemployment Compensation Law. The board made findings of fact and rulings of law, and entered an order denying appellant's application, and dismissed the same, from which order this appeal is prosecuted.

The findings and rulings of the board which reflect the material facts submitted by the respective parties sufficient to a proper understanding of the questions involved herein are, as follows:

I.

"That P. G. Batt has from time to time since the Unemployment Compensation Law of Idaho (1941 S. L. at pp. 393-4, Sec. 18-5 (f), effective May 7, 1941) and until

exempt therefrom by Amendment, 1943 S. L. at p. 60, Sec. 19 E (f) effective February 5, 1943, and by Amendment, 1943 S. L. at p. 186, Sec. 19 E (f), effective February 26, 1943, made payments under protest of contributions or taxes during the years in the amounts and at the times stated in his application for Refund, and that the computation of such contributions or taxes, and the amounts so paid, were for and upon wages for services of individuals employed by P. G. Batt in connection with the processing operations hereinafter detailed * * *

"That at or about the time of commencing to pay contributions under said Act as aforesaid, the applicant filed a protest * * *

### III.

"That P. G. Batt is the owner of approximately 2,000 acres of land upon which he raises potatoes, onions, carrots, lettuce, and other vegetables; that the said P. G. Batt is the owner of processing sheds at Wilder and Homedale, Idaho, located at the trackage thereat and not on the farm lands of the said P. G. Batt.

* * * *

### V.

"That P. G. Batt goes to the farmer who raises vegetables that are packed and processed by P. G. Batt and purchases the farmer's produce with the understanding that such portion of his produce that meets the State and Federal statutes or regulations and is salable shall be paid for by P. G. Batt; that sometime such products are sold only on consignment, depending upon the condition of the market at the time, that is, if the market is strong, P. G. Batt buys outright from the farmer, paying the farmer so much for number one and so much for number two graded vegetables, the price depending upon how the produce packs out; if the market is weak, P. G. Batt takes such products upon consignment, and if the market goes down, the farmer takes the loss, and Batt charges the farmer a per cent for packing and processing, and also a brokerage fee; that none of the products packed and processed are returned to the farmer for sale by the farmer, but all of such produce is marketed by P. G. Batt under the trade name of

Idaho Pals Brand, which brand is owned and belongs to P. G. Batt.

\* \* \* \*

## VII.

"That all services herein set out and performed by individuals for and in behalf of the applicant were performed exclusively within the State of Idaho and within and upon the premises of the applicant, and that all of said work was performed for the applicant in his business as a processor and packer; that none of the services hereinbefore mentioned were rendered upon a farm, but were performed in packing houses and warehouses owned and operated by the applicant, *although such services were the same and identical services usually rendered in preparing commodities for market upon a farm by those farmers having large enough farms to be able to afford the necessary equipment incident to the packing and processing of their own products;* \* \* \* (emphasis ours)

## VIII.

"The operations which took place at the applicant's sheds were as follows:

"The field run produce from the applicant's farming operations and the field run produce owned by other farms, as hereinbefore stated, were intermingled and went through the process together.

"In the case of potatoes the produce arrived at the sheds covered with dirt and intermingled with clods, vines, and sticks, culls, and bruised, cut, rotten, and misshaped potatoes just as dug from the ground. The vines and many of the clods were picked out by hand and other dirt screened out, and then were placed in a mechanical washer partly for the purpose of pre-cooling and partly to clean. The cooling and cleaning operation is sometimes done by spraying with hose. After being washed, the produce was placed on tables where it was hand sorted and graded and the marketable portions placed in bags which were usually branded. After the sack was sewed, it was trucked by hand into the cars where the employees packed or stacked for shipment, and the car was iced by placing ice in bunkers at the end of each car.

In the case of onions the same operation took place, except that the same were not washed, and payment of contributions for which refund is asked was for labor so engaged.

"In the case of lettuce, delivery field run was made by the farmer in his own truck, and the applicant's crew took over at the shed. The first operation was trimming, which consisted of cutting off the butt, clipping off surplus wrapper leaves and broken and discolored leaves, and discarding heads which were unsuitable for market. The marketable heads were then placed on a table and were divided according to size and placed in crates containing the same sized heads. During this process, any other unsuitable heads were discarded. As the lettuce was packed in the crates, ice was placed between each layer, and the crate stamped to designate the number of heads per crate. A paper pad was put on top of the crated lettuce and ice placed over it, the paper folded across the top and the cover nailed on, and the crate then conveyed into the car and loaded, and when loaded, ice was placed in the car over the tops of the crates. The employees, in addition to the above operations, prepared the ice and cleaned up the refuse, and were from time to time engaged in checking the amounts received and going into cars, and disposing of culls.

"In the case of peas, delivery field run was made from the farm in sacks, the contents of which were dumped on a table and the unmarketable peas such as those too small, ill-shaped, broken, bruised and old, were picked out by hand, usually by women. They were not sized or graded otherwise. The remaining marketable peas were placed in hampers or tubs, and in some instances the top layers were straightened out or 'faced' in order to make the hamper or tub more attractive. The hamper or tub was labeled PALS BRAND and a cover placed on it, and then went into a tank of cold water in which it was immersed for precooling, after which it was taken into the car and loaded, and ice placed over the top for refrigeration.

"In the case of carrots, the farmer producer graded and tied in bunches on the farm, placed the same in crates, and the crates were delivered to the applicant. The bunches were then washed, sized, packed, and placed in cars, ice

being placed in the crates and in the cars as in the case of lettuce.

## RULINGS OF LAW

"That said P. G. Batt is a covered employer within the meaning of Section 7-5 of Chapter 182 of the 1941 Session Laws, and that the services rendered by individuals in the employ of P. G. Blatt in processing, packing and marketing of farm produce are within the term 'covered employment' as defined in Section 18-3 of Chapter 182 of the 1941 Session Laws, and such services are performed in the employ of P. G. Batt whose principle occupation is processing, packing and marketing of farm produce, and that the farming operations of the said P. G. Batt are only incidental to his principal occupation of processing, packing, and marketing farm produce.

## ORDER

"IT IS HEREBY ORDERED, ADJUDGED, AND DE-TERMINED That the contributions paid by the said P. G. Batt under the Unemployment Compensation Law were not erroneously collected, and the application of said P. G. Batt for a refund of said contributions be and the same is hereby denied, and said application is hereby dismissed."

Since the original enactment (Sess. Laws, 1935, 3rd Ex. Sess., chap. 12) the Unemployment Compensation Law has been amended at least twelve·times and is, to say the least, somewhat confusing. However, at this time we are called upon to construe the meaning of Section 18-5 of Chapter 182 of the 1941 Sess. Laws.

A determination of the questions involved depends upon a proper construction given to subsec. (f) of sec. 18-5, supra, and particularly the proviso contained therein. Said subsection reads, in part, as follows:

"(f)    Services performed in the employ of an individual owner or tenant operating a farm * * * in connection with the processing, packing or marketing of the produce of such farm where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the em-

ploy of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would otherwise be termed covered employment within the meaning of this Act."

Subsection (f), supra, definitely excludes payment of contributions for services performed by laborers employed by owners or tenants operating a farm in processing, packing and marketing the produce of such farm where such processing, packing and marketing is an incident to the ordinary farming operations of such individual owner or tenant. (*Batt v. Unemployment C. Division*, 63 Ida. 573, 123 P. (2d) 1004, 139 A.L.R. 1157.)

There is no contention made here that appellant is liable for contributions under the act as it existed prior to 1941 or subsequent to 1943. In other words, respondent contends that appellant is liable for contributions under the act during the period from May 7, 1941 to February 26, 1943, relying upon the proviso in subsection (f), supra, to support his contention.

In the absence of said proviso it must be conceded that appellant would not be liable for contributions.

The board denied appellant's application for refund upon the theory, apparently, that appellant's farming operations were only incidental to his principal occupation, to wit, processing, packing and marketing of farm produce; that his extensive operations in farming 2000 acres of land were merely incidental, and therefore he is liable under the proviso for the payment of contributions on his employees.

Appellant would not be liable for contributions upon wages paid for services rendered by his employees in processing, packing and marketing farm products raised on his own farm or produce purchased or received on consignment for processing, all of which is agricultural labor. (*Batt v. Unemployment C. Division*, supra.) Such employees being engaged in ordinary farming operations were not covered employees. The question therefore arises, is appellant liable to pay contributions upon wages paid to employees engaged in processing and packing farm products of other land owners or tenants produced within the area where his processing plants are located?

The board in its finding VII. found, among other

things, that "such services (labor performed in processing and packing farm products of other land owners or tenants) were the same and identical services usually rendered in preparing commodities for market upon a farm by those farmers having large enough farms to be able to afford the necessary equipment incident to the packing and processing of their own products." In other words, had the packing and processing been done on their own farms and not in appellant's packing houses, such labor would be exempt. It would therefore follow that small farmers or tenants who are unable to build and equip a processing plant would be required to pay contributions, inasmuch as the owner of the processing plant would charge and collect from the small farmer whatever contributions he would be required to pay for processing, packing and making ready for market the farm products of the small farmer. We are not convinced the legislature in adopting the proviso contained in subsection (f), supra, intended to make possible such discrimination.

We think it was the legislative intent to exclude all services of wage earners in agriculture from the benefits of the act, and exclude from tax burden the produce of all farmers, large or small, whether processed on their own farms or at the processing plant of another, it all being agricultural labor. It clearly was not the intent of the legislature to burden the small farmer's produce with, and relieve the large farmer's produce from, a tax, nor to grant benefits to the wage earner working on the produce of small farmers and deny benefits to the wage earner working on the produce of the large farmers.

We are not called upon to determine appellant's liability, if any, under the act after the gathering, delivery, processing and packing of the farm produce is completed. The issue involved here only concerns refunds for labor performed in the first instance.

The board concluded in its rulings of law:

"That said P. G. Batt is a covered employer within the meaning of Section 7-5 of Chapter 182 of the 1941 Session Laws, and that the services rendered by individuals in the employ of P. G. Batt in processing, packing and marketing of farm products are within the term 'covered employment' as defined in Section 18-3 of Chapter 182 of the 1941 Session

Laws, *and such services are performed in the employ of P. G. Batt whose principal occupation is processing, packing and marketing of farm produce, and that the farming operations of said P. G. Batt are only incidental to his principal occupation of processing, packing, and marketing farm produce."* (emphasis ours)

Without incorporating in this opinion the testimony adduced at the hearing in an attempt to establish the fact that appellant's principal occupation is processing, packing and marketing of farm produce, as concluded by the board, in our opinion there is no evidence to support the board's conclusion.

Appellant's processing of products raised on his own farms was an adjunct to farming necessary to make marketable his produce. He incidentally processed the produce of his neighbors whose farming operations were not large enough to justify the expense of buying equipment and assembling a crew of laborers. All the labor performed either on appellant's farms or on the farms of his neighbors, of much smaller acreage, was agricultural labor and, as such, exempt under the act. There was nothing done to change the character of the farm products by reason of the processing and packing, they continued to remain farm products. What the occupation, business or profession of the employer may be is not controlling, but what type of service is rendered by the employees to the employer.

In *Mundell v. Swedlund,* 59 Ida. 29, 80 P. (2d) 13, this court stated that:

"*Dorell v. Norida Land & Timber Co.,* supra, (53 Ida. 793, 27 P. (2d) 960) supports the rule that it is the whole character of the employment, rather than merely the pending task or the place of performance, which must be looked to in order to determine whether the employee is engaged in an agricultural pursuit."

To the same effect see *Peterson v. Farmers' State Bank of Eyota* (Minn.), 230 N.W. 124; *Wayland v. Kleck* (Ariz.), 112 P. (2d) 207; *State v. Christensen* (Wash.), 137 P. (2d) 512; *American Sumatra Tobacco Corp. v. Tone* (Conn.), 15 A. (2d) 80.

■ We are satisfied from a careful study of the record that appellant was not liable for the tax since he and his employees were engaged in agricultural labor within the meaning of the proviso contained in subsec. (f) of sec. 18-5 of Chapter 182 of the 1941 Sess. Laws. (*Batt v. Unemployment C. Division*, supra; *Big Wood Canal Co. v. Unemployment C. Division*, 63 Ida. 785, 126 P. (2d) 15; *Carstens Packing Co. v. Unemployment C. Division*, 65 Ida. 370, 144 P. (2d) 203; *In re Farmers Cooperative Creamery Co.*, 66 Ida. 70, 155 P. (2d) 762.)

From what has been said it follows that the order of the board is reversed and respondent is directed to refund to appellant the full sum of money exacted and collected from him during the period from May 7, 1941 to February 26, 1943, as unemployment compensation taxes, or contributions.

Givens and Holden, JJ., concur.

Ailshie, C. J., did not sit at the hearing nor participate in the decision.