# Bayuk Cigars, Inc., et al. v. Chesnut, Secretary of Labor and Industry

110

*Douglas D. Storey*, of *Storey & Bailey*, and *Leonard J. Schwartz*, of *Fox, Rothschild, O'Brien & Frankel*, for plaintiffs.

*David R. Perry*, Special Deputy Attorney General, and *James H. Duff*, Attorney General, for defendant.

HARGEST, P. J., July 9, 1945.—This suit is brought to enjoin defendant from attempting to enforce contributions under the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS § 751.

*Abstract of bill*

Plaintiff Bayuk Cigars, Inc., is a Maryland corporation, with its principal office in Philadelphia, and is engaged in the manufacture ánd sale of cigars and other tobacco products. The other plaintiffs, S. N. Mumma & Company, A. H. Sondheimer, and N. W. Weaver, are residents of Lancaster County, engaged in the cultivation and packing of leaf tobacco for sale, and in purchasing and packing leaf tobacco as independent contractors. For many years prior to January 1, 1936, and since, Bayuk contracted annually with Mumma, Sondheimer, and Weaver, as independent contractors, to purchase, on account of Bayuk, a specified

number of acres of leaf tobacco, cultivated on farms of Lancaster County, and pack said tobacco, the contractors to be paid on a cost-plus basis. Each had the sole right to select his employes, fix their wages, terms of service, and to supervise, direct, and control them. No employe of any of them is engaged on the premises of Bayuk or in any manner subject to Bayuk's protection or control.

The Federal Social Security Act of August 14, 1935, 49 Stat. at L. 620, provides that after January 1, 1936, every employer, as defined in the act, shall pay an excise tax with respect to the employment of individuals during each calendar year, except individuals engaged in "agricultural labor".

The Pennsylvania Unemployment Compensation Law established a system of unemployment compensation, and requires contributions to be paid, except for individuals engaged in agricultural labor, as defined in the act.

Bayuk is an employer within the meaning of both the Federal and Pennsylvania law, but none of the other plaintiffs is an employer.

Section 4(i) of the Pennsylvania statute provides when any employer has under him any contractor or subcontractor for any work which is part of his usual trade, unless the subcontractor is himself an employer, the original employer shall be deemed to employ each individual in the employ of subcontractor.

Defendant is demanding from Bayuk the filing of reports and payment of contributions, based on the employes of Mumma, Sondheimer, and Weaver, and unless it complies Bayuk will be exposed to unconscionable interest requirements provided by section 306, and a multiplicity of prosecutions and penalties provided for in section 803 of the act. If Bayuk should comply, none of the plaintiffs would have an adequate remedy at law or in equity to determine the issue raised in this bill or to recover back contributions paid, together with

interest, if it is determined that no contributions are due from plaintiff under section 4. Mumma, Sondheimer, and Weaver have an interest common with Bayuk, since section 4 purports to authorize Bayuk to recover contributions from them, notwithstanding their employes are not subject to the provisions of the statutes. Most of the employes of Mumma, Sondheimer, and Weaver are farmers, and, after said employment, they return to farming and are not eligible to unemployment compensation. Certain of the tobacco purchased for the account of Bayuk is packed on the farms where the tobacco has been cultivated, and packing is done by the farmers and the helpers of the farmers who raise the tobacco, and certain of the tobacco is cultivated and packed by Mumma, Sondheimer, and Weaver on their own farms and with the aid of their own farm help. As applied both to Bayuk, and Mumma, Sondheimer, and Weaver, section 4($i$) and other provisions of the act hereinafter referred to are unconstitutional.

Plaintiffs pray that defendant be enjoined from enforcing the provisions of the act against any of the plaintiffs.

### Answer of defendant

Defendant, admitting many of the averments, alleges that the business conducted by Bayuk includes purchasing, packing, curing, and processing of tobacco, and that the three plaintiffs have, "either as a contractor under contract with Bayuk or as an agent for Bayuk", engaged in purchasing and packing tobacco for Bayuk, and employed individuals for such work.

Defendant denies that all of the employes and all of the activities of Mumma, Sondheimer, and Weaver were "agricultural labor" within the meaning of the law, and have been engaged in purchasing and packing tobacco for Bayuk, but none of the plaintiffs has filed employer's reports nor paid contributions upon such

individuals for the time which they were engaged as employes of Mumma, Sondheimer, and Weaver.

Defendant admits that it has demanded of Bayuk the filing òf reports and the payment of contributions based upon each day's work for each of the individuals employed by Mumma, Sondheimer, and Weaver in the purchasing or packing of tobacco which Mumma, Sondheimer, and Weaver were engaged in as contractors under contract with Bayuk, or as agent for Bayuk; and denies the allegations of unconstitutionality.

## Facts

We have answered requests for findings of fact, and restate them as follows:

1. Bayuk Cigars, Inc., is a corporation of the State of Maryland, with its principal office in the City of Philadelphia. It is engaged in the manufacture of cigars and other tobacco products. It will be hereinafter designated as Bayuk.

Harvey B. Mumma and Stanley N. Mumma are citizens of Lancaster County, Pa., and partners trading as S. N. Mumma & Company, hereinafter designated as Mumma.

A. H. Sondheimer is a citizen of the City of Lancaster, Pa., and is hereinafter styled Sondheimer.

Noah W. Weaver is a citizen of New Holland, Lancaster County, Pa., and is hereinafter styled Weaver.

2. Defendant is the secretary and executive head of the Department of Labor and Industry, which is the agency designated to administer the Unemployment Compensation Law.

3. From prior to 1936, and until December 31, 1943 (in the case of Sondheimer until July 1, 1941), Mumma and Weaver were engaged in the raising of leaf tobacco for sale on their respective farms, and also engaged by Bayuk by written contracts to purchase and pack Lancaster County leaf tobacco for it. Mumma and Weaver owned warehouses on their farms; Sondheimer rented a tobacco warehouse.

4. After the leaf tobacco has been cultivated, the farmer dries or cures it in sheds on his farm, strips the leaves from the stalks, then grades it (the better grades called "wrappers") according to the length of leaf. He ties 30 leaves of each grade into a "hand". He bunches the lower grades, called "fillers", and ties them into hands. After the tobacco has been sized, the farmer bales it into bales of approximately 70 pounds; and at this point the leaf tobacco is ready for sale by farmers to the three individual plaintiffs.

5. Although some farmers pack their own tobacco and sell it direct to a manufacturer, such as Bayuk, the greater portion of the Lancaster County leaf tobacco is sold to independent buyers, such as these individual plaintiffs who pack it for a manufacturer, such as Bayuk.

6. Each year Bayuk contracted separately with Mumma, Sondheimer, and Weaver to buy and pack tobacco for it, under written contracts, which were identical so far as the instant case is concerned. Bayuk advanced the money for the purchase of the tobacco, took the title to it when delivered to the warehouses, and carried the insurance on it after purchase. Bayuk paid the other plaintiffs the cost of purchase, their expenses in buying and packing, together with a profit of a certain amount per pound on the wrappers only, and also paid storage charges on said tobacco stored in the warehouses.

7. After the tobacco is delivered to their warehouses, the individual plaintiffs clean the wrapper tobacco, grade it according to length, and pack it in cases so that it will continue to sweat. This takes place during the first two months of the year. It is then ready for delivery to the manufacturer.

8. It is a long-established custom in Lancaster County for the manufacturer, such as Bayuk, to advance to the independent buyer, such as these individual plaintiffs, the money to purchase said tobacco.

9. For the period from 1936 to 1943, inclusive, Mumma employed, on the average, 95 men, of whom 90, or 95 percent, were local farmers or farm employes; Weaver employed about 52 men, of whom 42, or 81 percent, were local farmers or farm employes; and Sondheimer, up to July 1, 1941, employed about 33 men, of whom 19, or 56 percent, were local farmers or farm employes.

10. It is the custom of these independent buyers to give the farmers (or their tenants or employes), from whom the leaf tobacco is purchased, preference in the employment of men in packing said tobacco. For said period, Mumma employed about 75 of such men, or 79 percent, of all his employes; Weaver about 33, or 63 percent, of all his employes; and Sondheimer about 13, or 39 percent, of all his employes.

11. For the years in question, Mumma, Sondheimer, and Weaver did not employ any employes in any employment for some portion of each of some 20 days during the respective calendar years, each day being in a separate week; nor did Bayuk exercise any control over the terms of employment, the wages, or the time of employment.

12. In the purchasing and packing of leaf tobacco, Mumma, Sondheimer, and Weaver were engaged in an independent business, and not as agents of Bayuk. They were free from the control or direction of Bayuk in the selection and purchase of the tobacco, and the work of packing was performed by their own employes on their own premises.

13. Defendant demands from Bayuk the filing of reports and the payment of contributions under the provisions of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, for the period from 1936 to 1943, inclusive, on the wages paid to the employes by Mumma, Sondheimer, and Weaver.

*Questions involved*

1. Is there such adequate remedy at law so as to oust jurisdiction in equity?

2. Are Mumma, Sondheimer, and Weaver engaged in "agricultural labor" as that term is defined in the statute in question?

3. Are the individuals in question independent contractors or agents of Bayuk under the contracts for the purchasing, packing, and storage of the tobacco, within the meaning of section 4(*i*) of the Unemployment Compensation Law?

4. Is the plaintiff Bayuk liable for the filing of reports and payment of contributions based upon the wages paid by Mumma, Sondheimer, and Weaver to their employes?

*Statute involved*

Section 4(*i*) of the statute as amended by the Act of April 23, 1942, P. L. 60, provides that "Employer" means one who ". . . employs any employe (whether or not the same employe) in employment subject to this act for some portion of each of some twenty (20) days during the calendar year . . . each day being in a different week . . .

"Whenever any employer contracts with or has under him any contractor or subcontractor for any work which is part of his usual trade, occupation, profession or business, unless such employer, as well as each such contractor or subcontractor, is an employer . . . the employer shall, for all the purposes of this act, be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which said individual is engaged in performing such work, except that each such contractor or subcontractor who is an employer (as defined in the first paragraph of this subsection) shall alone be liable for the employer's contributions measured by the wages payable to individuals in his employ, and except that any em-

ployer who shall become liable for, and pay contributions with respect to individuals in the employ of any such contractor or subcontractor who is not an employer (as defined in the first paragraph of this subsection), may recover the same from such contractor or subcontractor."

Section 4 $(j)$ (2) $(B)$, second paragraph, provides:

"An individual performing services for remuneration in an employment subject to this act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that— (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an independently established trade, occupation, profession or business."

Section 4 (4) provides:

"The word 'employment' shall not include—

"(1) Agricultural labor which shall include all services performed—

"(a) On a farm in the employ of any person in connection with cultivating the soil or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding . . .

"(d) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transportation to market any agricultural or horticultural commodity, but only if such service is performed as an incident to ordinary farming operations. . . ."

Section 308 provides:

"Contributions unpaid on the date on which they are due and payable, as prescribed by the department, shall bear interest at the rate of one per centum per month or fraction of a month from the date they become due until paid."

Section 803 provides:

". . . upon conviction . . . , be sentenced to pay a fine of not less than twenty nor more than two hundred dollars, and in default of the payment of such fine and costs shall be sentenced to imprisonment for not longer than thirty days, and each day such violation continues shall be deemed to be a separate offense."

1. Notwithstanding defendant filed preliminary objections to the bill, contending that there was an adequate remedy at law, which we discussed at length and held that the bill should be sustained, defendant now reargues at length that there is an adequate remedy at law.

We do not propose to repeat what we said in our opinion overruling this preliminary objection (55 Dauph. 134). It may, however, be pertinent to state that defendant cites, in support of its contention, some earlier cases of the Supreme Court of Pennsylvania and the Supreme Court of the United States, but the recent decisions of the Supreme Court of Pennsylvania have broadened the scope of equitable jurisdiction where an administrative agency is attempting to exercise powers not conferred upon it (Bell Telephone Co. v. Driscoll et al., 343 Pa. 109; Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382, 392), where the legal remedy is not both adequate and complete (Fidelity-Philadelphia Trust Co. et al. v. Bashore, Secretary of Labor, etc., 44 Dauph. 380; Fidelity-Philadelphia Trust Co. et al. v. Hines, Secretary of Labor, etc., 337 Pa. 48; York Rys. Co. v. Driscoll et al., 331 Pa. 193, 197; Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 534), and where the penalties for a violation of an unconstitutional statute are grossly

unfair and severe (Bell Telephone Co. v. Driscoll et al., supra; Pennsylvania R. R. Co. v. Driscoll et al., 330 Pa. 97, 101) ; and a bill may be sustained on the ground that it is the most convenient remedy (Equitable Loan Society et al. v. Harr, Secretary of Banking, et al., 45 Dauph. 198, 201).

We adhere to our former decision that equity is the appropriate remedy in the instant case.

2. We approach the decision of this case with two cardinal principles in mind: (a) As enjoined by the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52(3), 46 PS §552, we must construe the provisions of the act in question so as, if possible, to prevent any conflict with the Constitution: Hotel Casey Co. v. Ross et al., 343 Pa. 573; Fidelity-Philadelphia Trust Co. et al. v. Hines, Secretary, etc., 337 Pa. 48; (b) we are dealing with a taxing statute whose provisions should be strictly construed against the right to tax: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558; Commonwealth v. Freeman, 55 Dauph. 112, 115; Commonwealth v. Philadelphia Rapid Transit Co., 287 Pa. 190, 29 Dauph. 298; Husband's Estate, 316 Pa. 361; Arbuckle's Estate, 324 Pa. 501.

(a) The important question is whether the employes of the three individual plaintiffs are engaged in "agricultural labor", which is defined, as applicable to this case, as "cultivating the soil or in connection with the raising or harvesting of any agricultural or horticultural commodity".

The tobacco is harvested and baled on the farms. It is sent to the warehouses, then packed and stored by the same persons who worked on the farms. There is no packing or storing on the farms, and the storehouses were those of the individual plaintiffs. When the tobacco is packed and ready for storage (and not until then), do the wages incident to its preparation for market cease.

It must be borne in mind that we are dealing with an act which requires contributions from wages for an unemployment fund. The act does not impose contributions on storage charges. Defendant claims that employment bestowed on the tobacco is not agricultural labor if the tobacco is processed elsewhere than on the farms. We conceive that it makes no difference, if the processing is necessary to prepare the tobacco for market, whether it is done on the farm or off the farm. It is not a marketable product until that processing is complete; and in the instant case practically all of the services are done by the farm laborers, who start with the cultivating, and continue the work up until the time it is packed and ready for the market or delivery to Bayuk.

It makes no difference, in dealing with the employes of the three individual plaintiffs, that Bayuk has purchased directly some tobacco and packed it with its own employes. We are dealing with what is agricultural labor, and, primarily, with what is done under the contracts involved by the three individual plaintiffs.

In American Sumatra Tobacco Corp. v. Tone et al. (Conn.), 15 A. (2d) 80 (1940), the corporation grew and packed a portion of its shade tobacco, and *unemployment taxes were assessed against it on the wages paid by it to its own employes who worked in its warehouses packing that tobacco.* The Supreme Court of Connecticut held that packing the tobacco was an essential part of a farm operation and not part of a manufacturing or commercial operation.

We are of the opinion that regulation no. 8 of the Department of Labor and Industry could not be applied so as to limit "agricultural labor" to that processing which was done on the farm, where, as in the instant case, more processing is required to make the product marketable.

In Batt v. Unemployment Compensation Division, 63 Idaho 572, 123 P. (2d) 1004 (1942), a vegetable

grower and packer owned and operated sheds not located on his farm where he cleaned, graded, and packed produce raised on his own land, and also purchased from other farmers. The Supreme Court of Idaho held that "agricultural labor" included all the labor on the farm or elsewhere "in preparation of his product for market", whether grown by him on his own farm or purchased.

There are a number of cases which are in harmony with those just referred to: Carstens Packing Co. v. Industrial Accident Board (Idaho), 123 P. (2d) 1001 (1942); United States v. Turner Turpentine Co. et al. (C. C. A. 5, 1940), 111 F. (2d) 400; Cache Valley Turkey Growers Assn. v. Industrial Commission (1943), 144 P. (2d) 537; State v. Christensen (Wash.), 137 P. (2d) 512 (1943); Chester C. Fosgate Co. v. United States (1942), 125 F. (2d) 775.

In Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399 (1932), the Superior Court held that one employed by a corporate owner of an orchard to haul barrels of apples by truck from the farm to the station was engaged in agricultural labor and not within The Workmen's Compensation Act. It was there said (p. 404):

"Of course the *storage and marketing* of the crop raised whether it be fruit or grain, is just as much the work of agriculture as is the planting and cultivation thereof, or *any other labor engaged in for the purpose of furthering, as a main or an incidental purpose, the cultivation of the ground or raising of crops.* We are convinced that the defendant as a fruit grower was engaged in agriculture, and that the claimant in helping the defendant for compensation to *harvest and deliver for shipment or storage* the crop of apples obtained from the orchards of the defendant, was engaged in the pursuit of agriculture." (Italics supplied.)

We hold that whatever labor is put upon the tobacco up to the time that it is finally packed, prepared for market in the usual way, or ready for delivery to Bayuk, is incident to the cultivation and marketing of the crop, and therefore within the term "agricultural labor", whether that labor is applied in a warehouse on or off the farm where the tobacco is raised.

(b) Cultivating, purchasing, and packing leaf tobacco are not operations which are part of Bayuk's usual trade or business. We have found that Bayuk is engaged in the manufacture of cigars and other tobacco products. There is nothing in the case to indicate that its usual trade or business could, by any stretch of imagination, be extended to cultivating or packing leaf tobacco. Of course it purchases the packed tobacco.

The statute imposes upon the employer the duty to report and contribute to the fund "for any work which is part of his usual trade, occupation, profession or business"; and, this being a taxing statute, it is not to be extended by implication or liberal construction so as to enlarge the subject of taxation: Commonwealth v. Freeman, 55 Dauph. 112, 115.

In Gallivan, to use, v. Wark Co., 288 Pa. 443, construing the liability of a principal contractor to a subcontractor's employes, the court said of the statute (p. 450):

"It cannot, however, be given effect beyond what is absolutely necessary to carry out the definitely expressed purpose of the legislature; it cannot be made to cover, by implication, situations not within the intent and scope of the Compensation Act."

In McGrath v. Pennsylvania Sugar Co., 282 Pa. 265, plaintiff, a stevedore of an independent contractor, claimed damages from the sugar company which controlled a wharf where the produce was received from which the manufactured material was removed, but

had no part in the actual handling of it on the pier. The court said (p. 269) :

"This service was always performed by the employees of a stevedoring firm, in this case Loveland & Company. The facts disclosed would not justify a finding that the labor performed was within the line of the 'regular business' of the defendant, and hence did not come within the sections of the act above referred to."

We think, under the facts of this case, further discussion of this proposition is unnecessary.

There is another reason why contributions from Mumma, Sondheimer, and Weaver cannot be exacted. Section 4 ($i$) of the statute defines "Employer" as one who "employs any employe (whether or not the same employe) in employment subject to this act for some portion of each of some twenty (20) days during the calendar year . . . , each day being in a different week . . ."

The packing of tobacco which Mumma, Sondheimer, and Weaver purchased from the farmers was a seasonal occupation, and we have found as a fact that their employment of the farm laborers to process and pack the tobacco in the warehouses did not require the time necessary to bring them within the definition of "employer" above stated.

3. Are the individual plaintiffs independent contractors or agents of Bayuk?

The Mumma contract was typical. It provided that Bayuk authorized Mumma to purchase not exceeding 2,800 acres of leaf tobacco, and agreed to pay the prices paid to the farmers, together with all direct charges incurred in buying, handling, and putting said tobacco in cases in the most careful and skillful manner, packing and holding the same for Bayuk, together with 1 cent a pound profit on wrappers, based upon receiving weights of said wrappers, the title to said tobacco to be in Bayuk from the time the same is de-

livered by the farmers to the warehouses of Mumma, and Bayuk to carry all insurance against fire on said tobacco, and to pay storage charges for storage in the warehouses of Mumma.

In the execution of said contract Mumma employed the farm laborers to handle the tobacco after the farmers had delivered the same to Mumma. There is no provision as to when or from whom the tobacco was to be purchased. Mumma had the responsibility for selecting what tobacco was purchased and had, prior to the advent of the Office of Price Administration when a ceiling price was placed on it, some discretion as to price. Mumma had full authority as to who and how many employes were engaged and the time which they were to work in processing the tobacco. In other words, there was full authority in Mumma to hire and fire employes without any control reserved by Bayuk. Mumma had the full responsibility for packing the tobacco.

Defendant contends that the relationship created by these contracts was one of agency, and, as indicating the frailty of his argument, he says:

"The question now arises as to whether a person can be deemed to be an independent contractor when that person pursues his trade, occupation, business or profession exclusively for another with whom he has contracted."

It is hardly necessary to answer that proposition. There are many independent contractors who work for a single employer in carrying out the trade, occupation, business, or profession of the contractor. Nor does the fact that the payment was on a cost-plus basis make it any the less one of an independent contractor: Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409; Johnson et al. v. Kusminsky et al., 287 Pa. 425.

The Government has largely resorted to such contracts both in World War I and in the present World War: Alabama v. King & Boozer et al., 314 U. S. 1.

In determining whether there is an independent contract under an unemployment compensation statute, the same rules are to be applied as in any other case: Commonwealth v. Freeman, 55 Dauph. 112.

In the A. L. I. Restatement of Agency, ch. 1, §2, (2), (3), p. 11, it is provided:

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

And in chapter 7, §220, p. 483, the rules for determining whether one is a servant or an independent contractor are set out at length, and the Pennsylvania annotations in the pocket parts show that the Pennsylvania authorities are overwhelmingly in accord with those rules.

It is not necessary to set them out at length.

We are of the opinion that the contracts in question in this case clearly show that these individual plaintiffs were independent contractors, tested by the definitions set out in section 220 of the A. L. I. Restatement of Agency.

4. In view of our conclusions that cultivating, purchasing, and packing of leaf tobacco, taken together, is agricultural labor, and that such activity is not part of Bayuk's usual trade and business, it necessarily follows that the Secretary of Labor and Industry cannot lawfully demand reports and contributions based upon the wages paid by Mumma, Sondheimer, and Weaver to their employes in processing tobacco.

We think this proposition is so plain that further argument is unnecessary.

It also follows that the constitutional attacks upon the statute need not further be considered because those attacks were predicated upon a construction of the statute which would require Bayuk to report and pay the contributions based upon the wages of Mumma, Sondheimer, and Weaver.

### Conclusions of law

1. Equity has jurisdiction over the parties and the subject matter, and the bill of complaint in this case must be sustained.

2. Bayuk is an employer within the meaning of both the Federal Social Security Act of August 14, 1935, as amended, 49 Stat. at L. 620 (42 U. S. C. §301 et seq.), and the Pennsylvania Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751.

3. In the purchasing and packing of leaf tobacco, neither Mumma, Sondheimer, nor Weaver is an employer within the meaning, or subject to the provisions, of either of the acts mentioned in conclusion no. 2, because:

(a) Neither did employ any employe in an employment (as legislatively defined) for some portion of each of some 20 days during the calendar years from 1936 to and including 1943, each day being in a separate week; and

(b) Each one of said employes of Mumma, Sondheimer, and Weaver was engaged in "agricultural labor".

4. In cultivating, purchasing, and packing the leaf tobacco, Mumma, Sondheimer, and Weaver were contractors, and were neither employes nor agents of Bayuk, within the meaning of section (4) (i) of the Unemployment Compensation Law.

5. Cultivating, purchasing, and packing leaf tobacco are not part of Bayuk's "usual trade, occupation, pro-

fession or business", within the meaning of section 4(*i*) of the Unemployment Compensation Law.

6. The bill is sustained and an injunction will issue.

### *Decree*

Now, July 9, 1945, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that an injunction issue restraining defendant, W. H. Chesnut, Secretary of Labor and Industry, and his successors in office, and his or their deputies, agents, servants, or employes from attempting to enforce against any of the plaintiffs the provisions of section 4(*i*) of the Unemployment Compensation Law, insofar as said section may purport to require reports from Bayuk Cigars, Inc., and the payment of any unemployment contributions with respect to any employe of S. N. Mumma & Co., A. H. Sondheimer, and N. W. Weaver. Defendant, W. H. Chesnut, shall pay the costs of this proceeding.