**Fred AYOUB, Appellant,**

v.

**Lola K. HEROLD, Appellee.**

No. 5124.

Court of Civil Appeals of Texas.

El Paso.

Dec. 28, 1955.

Rehearing Denied Jan. 25, 1956.

Francis S. Ainsa, A. W. Norcop, El Paso, for appellant.

Leo Jaffe, Kemp, Smith, Brown, Goggin & White, El Paso, for appellee.

McGILL, Justice.

The appellee, Lola K. Herold, surviving mother of her deceased daughter, Lillian Herold Ayoub, brought this suit as plaintiff against Fred Ayoub, the surviving husband of Lillian Herold Ayoub as defendant. The plaintiff claimed title under parol trust to eight parcels of land which stood in the name of Lillian Herold Ayoub at her death. Fred Ayoub claimed that the land was the separate property of Lillian and that he was entitled to an interest therein under the laws of descent and distribution. He filed a cross-action to establish his title and interest in the eight parcels which stood in the name of Lillian Herold Ayoub, and in a ninth parcel which stood in the name of Joe Herold, Lillian's father, who predeceased her, and who was the husband of Lola K. Herold. Annie S. Maisel and her husband, Eric Maisel, were made cross-defendants with Mrs. Herold. Annie and Eric Maisel filed a disclaimer. In the cross-action Fred Ayoub also claimed a share in the rents collected since Lillian's death on March 15, 1952 and also certain personal property which was in the possession of Mrs. Herold. There was no controversy between the parties as to parcel No. 9. The trial court rendered judgment for Mrs. Herold, holding that parol trusts had been established in her favor with respect to each of the eight parcels. The judgment also adjudicated the rights of the parties in the rents and other personal property. Fred Ayoub has appealed, and Mrs. Lola K. Herold is the appellee.

Appellant's first point is that the court erred in making its findings of facts Nos. 8, 9, 10, 11, 12 and 13, and in making its conclusion of law No. 1, in that plaintiff failed to prove an express or a resulting trust in parcels of land 1 to 8 inclusive, for her benefit by evidence clear, satisfactory and convincing, competent and admissible. The plaintiff claimed that title both legal and equitable, in parcels 1 to 8 inclusive, which stood in the name of Lillian Herold Ayoub as record owner, was at the time of the filing of plaintiff's petition fully vesting in her. To substantiate her claim she testified herself and further offered the testi-

mony of Annie Samario Maisel, who had been raised in her home. She further offered the testimony of J. A. Diaz, W. M. Barnes, Robert Goldoft, Robert E. Fulshom and Romelia Miner. The witness Diaz testified that he was told by Joe Herold that he had conveyed all of the property to Lillian, and "he was doing it because if he should pass away he wanted the property to be in Lillian's name because she was better prepared or educated to handle the property for her mother." Also, that Lillian Herold Ayoub would refer him to her mother when he wished to talk about one of the pieces of property involved, which he rented.

The witness Barnes testified that Lillian Herold Ayoub had told him that she could not decide on the renting of a certain piece of property, and would have to wait for her mother, and that he dealt regarding the property with the plaintiff.

The witness Goldoft testified that on one occasion he was at the home of plaintiff and that Lillian Herold Ayoub was there, together with Annie Maisel and her husband, and that in discussing their various properties Lillian and Annie would always tell him that the property was "mamma's" and that they could do only what "mamma" told them to, and that Lillian had said "that even though the property had been changed into her name that her mother was custodian of the funds because it was her's, her mother's, and that any payment she would always insist that, tell him every time because if I tried to sell them more it was a question of 'I am sorry, that is up to mamma. Mamma has got to tell us whether it is going to be more. She is paying for it. It comes out of her money'." And further that Lillian had told him on many occasions that her mother owned the property.

The witness Fulshom testified that he had a conversation with Lillian shortly before she went to the hospital for the operation from which she died, and that in response to a question as to whether she had made a will Lillian replied that she did not think

it was necessary since "everything she had belonged to her mother."

The witness Miner testified that she had heard a conversation between Mr. Charles Owen, an attorney, and Lillian, in which Mr. Owen asked why Lillian's mother insisted on having everything in her name, to which Lillian replied that it was because her mother had confidence in her and that it had always been that way, and further that Lillian had stated that if she got married or died it would make no difference since Annie knew that everything was her mother's. She further testified that Mr. Owen told Joe Herold that he was being a fool for putting property in Lillian's name, to which Joe Herold replied "he knew what he was doing, that he knew that Lillian had a good head and that he knew his wife could not manage the property as well as Lillian could, that his wife was old and that she worked a lot in her garden with her knitting; and that in other words, that is the way he wanted it, for Lillian to have and manage it for his wife."

Plaintiff testified that shortly after her marriage to Joe Herold she commenced the operation of a small fruit stand from which she derived her money and which she kept until it was sold in 1944; that the money for the purchase of the various pieces of property came from her fruit stand business. That prior to February 1934 Joe Herold approached her and stated:

"I am in poor health. I am sick. I don't know if I will die today or tomorrow and I want * * * have a security so nobody can take anything away from you. Lillian is an age now that she can take * * * we shall put this property in her name for your trust. * * * that she is just taking care of your property. It is yours, you earned it, you made, you worked hard for it. I didn't put a nickel in it. It is yours as I always have told you. But being that you didn't have any schooling, you don't know how to be represented in public, so Lillian is going to be your representative. It is not her's.

It is not her's. I want you to understand that she is just only going to take care of it for you. Take care of your business. And that was the agreement."

Subsequent to this conversation parcels 1 to 5 inclusive were transferred to Lillian Herold Ayoub; that she had the same conversation with her husband prior to the purchase of property from Elizabeth Cecelia Mundy (Parcel No. 6) and that the property was bought in the name of Annie as well as Lillian because she cared for Annie. Plaintiff testified to the same effect regarding the remaining two parcels of property. The witness Annie Maisel testified that she was present at conversations between Joe Herold, Lillian Herold Ayoub and herself prior to or at the time of the deed to Lillian of parcels 1 to 5 inclusive, as follows:

"The first thing my Dad brought out, he said that Lillian soon was going to be about 21 years of age and he was going to get her exemption so she could vote and he would like to put my mother's property in Lillian's name to manage it and run it for mother, with the understanding that she is just to run it for mother, because Lillian was going to be out of school and she had all the time and she had an education and mother never had any schooling and he was afraid some day somebody would make a fool out of her."

That Joe Herold had told plaintiff once that he would feel good on his death if she had somebody to manage property for her, and that Lillian had told Joe Herold

"Dad, if you think that is the right thing that I should. * * * put the property in my name and manage it for Mother. * * *. since I don't have anything to do, I would be glad to manage it for my mother."

Annie further testified regarding the property in the 6200 block of Alameda Avenue that Joe Herold had said to plaintiff:

"If it is your wishes to buy it go ahead and buy it but I want this prop-, erty, to continue putting it in Lillian's

name so she can manage it like the rest of the property, and also Annie's name too."

She testified substantially the same way regarding the property at 2890 Grant Avenue and at 4400 Oxford Street, also that when Joe Herold was dying he told her

"And promise me you girls will take care of her the rest of her life, and never stay away from her and never take it away from her."

and that on the same occasion Joe Herold had told her

"everything is in Lillian's name to manage it for her and she has enough income to live and Lillian knows that she is supposed to manage this property for her, for your mother."

Annie also testified to further statements by Lillian to the effect that the property was her mother's. Plaintiff introduced tax receipts in the name of Lola Herold and checks for rent made by J. A. Diaz to Mrs. Lola Herold.

■ Appellant states that prior to the effective date of the Texas trust act in 1943 it was possible to prove that land conveyed by a deed regular on its face was impressed with a parol trust. However, he contends that the proof must be by clear, satisfactory and convincing evidence, that this is so whether the trust is express or resulting. This concession, it seems to us, renders unnecessary discussion of any contention that such trust cannot be shown by parol evidence. Obviously it can be.

The evidence on which plaintiff relies, all of which we hold was admissible, is as follows: J. A. Diaz testified that he was told by Joe Herold that he conveyed all the property to Lillian Herold Ayoub because she was better prepared to handle the property for her mother, also that Lillian would refer him to her mother when he asked to talk about one of the pieces of property. William Barnes testified that Lillian told him she could not decide on renting pieces of property, and would have to wait for her mother, and that he dealt regarding the

property with plaintiff. Robert Goldoft testified that on one occasion in discussing their properties Lillian and Annie would always tell him that the property was "mamma's" and they could do only what "mamma" told them to, and that Lillian had said that even though the property had been changed into her name that

> "her mother was custodian of the funds because it was her's, her mother's, and that any payment she would always insist that, tell me every time, because if I tried to sell her more or sell them more, it was a question of * * *. 'I am sorry, that is up to mamma. Mamma has got to tell us whether it is going to be more. She is paying for it. It comes out of her money'."

and that Lillian had told him on many occasions that her mother owned the property. The witness Fulshom testified that shortly before she went to the hospital Lillian told him that she did not think it was necessary for her to make a will since "everything she had belonged to her mother."

The witness Miner testified to a conversation between Mr. Charles Owen, an attorney, and Lillian, in which Lillian stated that her mother insisted on having everything in her (Lillian's) name, because her mother had confidence in her, and if she got married or died it would make no difference since Annie knew that everything was her mother's and that she had heard Joe Herold say that he wanted Lillian to have and manage the property for his wife. Plaintiff testified that the money for the purchase of the various pieces of property came from her fruit stand business which she operated; further that prior to February 1934 Joe Herold approached her and stated:

> "I am in poor health. I am sick. I don't know if I will die today or tomorrow and I want * * * have a security so nobody can take anything away from you. Lillian is an age now that she can take * * * we shall put this property in her name for your trust * * * that she is just taking care of your property. It is yours, you earned it, you made, you worked hard

for it. I didn't put a nickel in it. It is yours as I always have told you. But being that you didn't have any schooling, you don't know how to be represented in public, so Lillian is going to be your representative. It is not her's. It is not her's. I want you to understand that she is just only going to take care of it for you. Take care of your business. And that was the agreement."

and that she had the same conversation with her husband prior to the purchase of the property (parcel No. 6) from Elizabeth Cecelia Mundy.

■■ This evidence was ample to sustain the trial court's conclusion 1(a) (b) and (c) without the testimony of the plaintiff and Annie Samaria Maisel, which appellant contends was inadmissible because of art. 3716 R.C.S. Appellant's contention to the contrary is overruled.

The second point is that the court erred in making its finding of fact No. 12 and its conclusion of law No. 1(b), since if plaintiff's funds were used for the purchase of Parcel No. 8 such funds were community funds of Lola K. Herold and Joe Herold in which Lillian Herod Ayoub had an inherited interest. Finding of Fact No. 12 was:

> "On April 3, 1944, Verna A. Dutton and Loraine O. Dutton executed and delivered a deed to Lillian Herold, wherein the property described as Parcel No. 8 in plaintiff's original petition was conveyed to Lillian. Prior to and at the time of the delivery of such deed it was agreed by and between Lillian and Plaintiff that Lillian would hold such property for the sole use and benefit of Lola and would manage it for her."

Conclusion of Law 1(b) was:

> "(b) At the time that parcels Nos. 7 and 8 were deeded to Lillian, she took such property in trust for the sole use and benefit of plaintiff by reason of the fact that prior to and at the time of receiving such conveyances, Lillian ex-

pressly agreed to hold such property in trust for plaintiff and by reason of the further fact that all of the consideration and purchase price for such parcels were paid by plaintiff. Defendant, Fred Ayoub, acquired no interest in said Parcels Nos. 7 and 8 as an heir of Lillian and plaintiff is entitled to a judgment adjudging and declaring that she owns all right, title and interest in and to Parcels Nos. 7 and 8 as against all parties to this suit."

█ In the trial court the defendant Fred Ayoub raised no issue that community funds were used in the purchase of any property here involved, therefore appellant cannot raise such point here, and we respectfully decline to consider it.

The third point is that the court erred in its Conclusion of Law 1(a) because plaintiff failed to produce any evidence indicating in any manner that Lillian Herold Ayoub either took or held parcels 1 to 5 inclusive as a constructive trustee or under a constructive trust. While we think the trust was an express trust rather than a constructive trust, what we have said with regard to the first point we think renders further discussion of this point unnecessary. It is overruled.

█ The fourth point is that if plaintiff did not fail to prove that Lillian Herold Ayoub held parcels 1 to 7 inclusive upon an express trust, such trust was equally for the benefit of Joe Herold, the interest of Joe Herold being inherited by Lillian Herold Ayoub upon the death of Joe Herold. We think this point is not well taken, since Joe Herold had disclaimed any interest in the property in favor of his wife. For this reason we overrule this point.

The fifth point is that the trust, if any, was a trust for life interest only, with a vested remainder in fee simple in Lillian Herold Ayoub and her heirs. That Lillian had no beneficial interest in any of the properties is established by the evidence. She so expressed herself. See also the testimony of Romelia Miner, Robert Goldoft

and Robert E. Fulshom, supra. This point is overruled.

The sixth point is that if plaintiff did not fail to prove a resulting trust upon parcels 1 to 7 inclusive, such trust inured equally to the benefit of Joe Herold and Lola K. Herold. This point is overruled because Joe Herold agreed that all right and ownership that he had or might have in the properties belonged to his wife Lola, and the trial court found that Joe Herold had made a gift of all his interest in the properties to his wife. Such finding is sustained by Lola Herold's testimony.

█ The seventh point is that the court erred in making its Findings of Fact 16 and 18(b), (c) and (d) and its Conclusions of Law 3, 4 and 5, because plaintiff failed to prove by a preponderance of competent and admissible evidence full title to and ownership of the bank account, bonds and automobile standing in the name of the plaintiff jointly with Lillian Herold or Lillian Herold Ayoub alone. These Findings of Fact were:

"16. During her lifetime Lillian had no money of her own and she had no bank account. During her marriage to Fred Ayoub, she did not receive sufficient money from him to pay for all of their living expenses.

"18. (b) All of the funds in the savings account carried in the State Nattional Bank of El Paso in the name of Miss Lillian or Mrs. Lola Herold, showing a balance of $3,998.00, were placed thereon out of money owned by and belonging to Plaintiff, and that she holds the entire title to such account.

"(c) The U. S. Series E Bonds with a maturity value aggregating $750.00 are payable to "Lola Herold or Lillian Herold" and that the funds for the purchase thereof were furnished by Plaintiff, Lola K. Herold.

"(d) Plaintiff, Lola K. Herold, holds the entire title to one 1951 Mercury Sports Sedan automobile, Motor No.

51SL–39416–M as she furnished all the funds in connection with the purchase of such automobile and that the same was registered in the name of Lillian Herold Ayoub merely for the purposes of convenience."

Conclusions of Law 3, 4 and 5 were:

"3. As all of the funds deposited to the savings account in the State National Bank of El Paso, were furnished by Plaintiff, Lola K. Herold, and there being no gift of such account to the deceased, Lillian Herold Ayoub, all of such bank account is the sole property and estate of Plaintiff, Lola K. Herold.

"4. In view of the fact that Plaintiff, Lola K. Herold, is the survivor of the payees named in the U. S. Series E. Bonds, and the fact that she furnished all the money to purchase the bonds, she holds the entire title thereto as her sole property and estate.

"5. As Plaintiff furnished all the funds in connection with the purchase of the 1951 Mercury Sports Sedan automobile and there was no gift thereof by Plaintiff, Lola K. Herold, to her daughter, Lillian, or to the Defendant, Fred Ayoub, all right, title and interest in such automobile is the sole property and estate of Plaintiff."

Robert Goldoft testified that Lillian Herold Ayoub during her lifetime told him that her mother (Lola) owned a Buick automobile. Mrs. Annie Maisel testified that Lillian told her mother, Lola, that Fred Ayoub was unwilling to buy a new automobile, and that she, Lola, might as well go ahead and buy the new car, and that Lola did this. Lola Herold testified that her money paid for the automobile. In our opinion this evidence was ample to sustain the trial court's findings of fact to effect that Joe Herold had made a gift of all his interest in the properties to his wife, and his Conclusions of Law Nos. 3, 4 and 5. The point is therefore overruled.

[7] The eighth point is that the court erred in making its Finding of Fact 18(e)

and in making its Conclusion of Law No. 7, in that plaintiff failed to show by a preponderance of competent and admissible evidence any loans or debts chargeable to Lillian Herold Ayoub or to her estate.

The court found that the following necessary amounts were paid by plaintiff as expenses of the last illness and funeral of Lillian Herold Ayoub:

"18(e) The following amounts were paid by Plaintiff, Lola K. Herold, as expenses of the last illness of Lillian Herold Ayoub and for her funeral expenses:

| | |
|---|---|
| Turner's Clinical & X-Ray Laboratories | $5.00 |
| El Paso Medical & Surgical Clinic.. | 7.50 |
| Professional Clinical Laboratory.... | 22.00 |
| Hotel Dieu Hospital | 3.95 |
| Dr. E. C. Burnell | 766.00 |
| Dr. Harold Eidinoff | 150.00 |
| Dr. Jack Bernard | 25.00 |
| Harding & Orr Funeral Home Services | 1004.00 |
| Pioneer Monument Company | 215.00 |
| The total aggregating | $2198.45" |

The witness Annie Maisel testified that plaintiff paid Dr. E. C. Burnell's bills in the amount of $766. She also paid Dr. Bernard's bill in the amount of $25; Harding & Orr's Funeral Home's bill in the amount of $1,004; bill of Pioneer Monument Company in the amount of $215; bill of El Paso Medical & Surgical Clinic in the amount of $7.50; bill of Dr. Harold Eidinoff, $150; bill of Hotel Dieu Hospital $3.95.

Plaintiff testified that she paid the following bills owing by Lillian after her death:

| | |
|---|---|
| "Dr. E. C. Burnell | $ 750.00 |
| Dr. Jack Bernard | 25.00 |
| Bill of Harding & Orr Funeral Home | 1004.00 |
| Bill of Pioneer Monument Company | 215.00" |

This evidence was sufficient to support the court's finding of Fact 18(e) and its Conclusion of Law No. 7. The eighth point is therefore overruled.

The ninth and last point is that the court erred in fixing a lien upon Parcel No. 9 of the real estate to secure payment of the lien.

We overrule this point. This indebtedness was secured by a lien upon all of the property of the estate. Gibson v. Oppenheimer, Tex.Civ.App., 154 S.W. 694 (writ refused).

▇ Parcel No. 8 was conveyed after the effective date of the Texas Trust Act. However, we think a resulting trust was created by this conveyance, and therefore it was not affected by said Act.

Having overruled all of appellant's points, the judgment is affirmed.

HAMILTON, Chief Justice.

The writer is unable to agree fully with the disposition of this case by the majority opinion. In his opinion the appellee has failed to produce any admissible evidence to the effect that the deceased Joe Herold at the time or prior to any of the conveyances of tracts numbered 1 through 7, agreed to give his wife, Lola Herold, his community interest. Annie Maisel, the only witness competent to testify to any of the transactions, testified in substance that the property was conveyed to Lillian for the purpose of managing for her mother. She did not testify to any words of Joe Herold which could be construed as making a gift of his community interest in and to the property to his wife, Lola. It is true that the testimony shows that Joe Herold, Lillian, Lola and Annie Maisel, each and all of them, may have had a misconception as to the status of the earnings of Lola from the fruit stand. Each and all of them spoke of such earnings as being the property of Lola as distinguished from being community property of both Joe Herold and Lola, but be that as it may, there was no testimony showing that Joe consciously gave up any interest that he owned in the properties to Lola, consequently the property being community at the time of the conveyance to Lillian, they remained community property in her hands as she was holding only for the purpose of managing for her mother. The manner in which the properties were handled after the conveyances to Lillian and after the death of Joe Herold was not inconsistent with the community

status of the property. Lillian and Lola being jointly interested in the property consulted with each other in almost every transaction made in reference to the properties, the community funds were jointly deposited in a savings account to Lillian or Lola; they both lived out of the revenue from the properties. It is my opinion that at the death of Joe Herold that Lillian inherited her father's one-half community interest in and to said properties.

In regard to the join bank account of Lillian and Lola, it is undisputed that the account was set up by a $1,500 deposit of community funds, of which Lillian was the owner of one-half, the evidence being undisputed that the funds were part of the proceeds of the sale of the fruit stand which Lola had been running and operating for many years, and which was undisputedly community property of Joe Herold and Lola Herold.

For these reasons I am compelled to dissent with the majority opinion.