Minnie Eva YELVERTON et vir, Appellants,

v.

Harry L. BROWN, Appellee.

No. 256.

Court of Civil Appeals of Texas.

Tyler.

Feb. 16, 1967.

B. R. Reeves, Palestine, for appellants.

McCain, Stanford & Price, E. Tate McCain, Palestine, for appellee.

DUNAGAN, Chief Justice.

This suit was brought by Harry L. Brown, individually, against Minnie Eva Yelverton and husband, under the Uniform Declaratory Judgment Act seeking a decree from the court in the form of instructions as to the purchase of 147 shares of the corporate stock of H. L. Brown & Associates, Inc. in accordance with the terms of a written contract entered into on or about June 15, 1960, between Harry L. Brown and wife, Doris Brown, and Harry A. Haverlah, the original incorporators of said corporation.

The trial court entered judgment declaring that the appellee (plaintiff) was entitled to purchase the 147 shares of stock that is the subject of this lawsuit and further declaring the methods and means for the purchase of said stock. Appellants (defendants) have appealed from this judgment.

In June, 1960, the appellee and his wife, Doris M. Brown, and Harry A. Haverlah organized H. L. Brown & Associates, Inc., a private corporation, to engage in the factoring and finance business. On June 15, 1960, being about the date the corporation was organized, appellee, his wife, and Harry A. Haverlah executed an agreement for the stated purpose of providing protection to both appellee and Harry A. Haverlah in the case of the death of either of them by conferring upon each, in the case of the death of the other, an option to purchase the deceased party's stock, or so much thereof as the optionee so desired. To that end, it was agreed that an annual audit would be made as of the last day of the month prior to the month of which said audit was commenced and that the actual book value of the stock for purposes of the contract would be determined by the applicable audit. The purchase price of any stock so sold under the agreement was to be the book value thereof so determined in

the last annual audit prepared prior to the death of the first of said parties.

On organization, appellee became the owner of 152 shares of the stock, his wife one share, and Harry A. Haverlah 147 shares of said corporation, and no transfer of any such stock occurred prior to the death of Harry A. Haverlah. At the time Harry A. Haverlah acquired his stock, he was married to Margaret Haverlah, and the stock became their community property. Doris Brown died on August 16, 1964, and appellee became owner of her one share and independent executor of her estate. Margaret Haverlah died on the 30th day of September, 1964, and appellant, Minnie Yelverton, was made independent executrix of her estate and became owner of her community half of the 147 shares as the sole beneficiary under the terms of her will, subject to the contract rights of appellee; and Harry A. Haverlah died on December 4, 1964, and appellee became independent executor of his estate and the entire estate passed to him as trustee under the will of Harry A. Haverlah. Appellee is not a beneficiary under the terms of the will.

Doris Brown, Margaret Haverlah and Harry A. Haverlah each died testate and the will of each was duly admitted to probate.

None of the capital stock of H. L. Brown & Associates, Inc. has been transferred on the books of the corporation since its original issue. Therefore, the stock on the record of the corporation is still in the name of Harry L. and Doris Brown and Harry A. Haverlah.

Appellee elected to exercise his option under the June 15, 1960 contract to purchase the 147 shares of stock in issue and gave written notice thereof to appellant, Minnie Yelverton, and her attorney. Appellee then filed this suit in the Third Judicial District Court of Anderson County alleging the foregoing facts and that he was entitled by reason thereof to purchase said 147 shares of corporate stock. In view, however, of his relationship, individ-

ually, to the estate of Harry A. Haverlah as its independent executor and as owner of the estate as trustee under the will, appellee concluded that, for the protection of said estate, he should file this action in the District Court for instructions as to the methods and means to be followed in determining the price to be paid for said stock.

Appellant, Minnie Yelverton, individually and as independent executrix of the estate of Margaret Haverlah, answered by general denial and therein asserted that the 147 shares of stock were the community property of Harry and Margaret Haverlah; that appellant, Minnie Yelverton, was the owner of Margaret Haverlah's one-half and "that Harry L. Brown is entitled to buy said stock at its reasonable cash market value, and an auditor should be appointed, and is hereby requested by defendants, to audit the books of said corporation for the purpose of reporting to this court the reasonable cash market value of said stock on the date of the death of Margaret Haverlah, deceased, and that this court after a hearing pay to said defendant one-half of the value of such stock." This constitutes appellants' entire answer, other than the prayer.

Issues of law and fact were tried to the court without the aid of a jury. On request of appellants, the court filed its findings of fact and conclusions of law. The record does not contain a statement of facts.

The court found that Harry A. Haverlah did not make the June 15, 1960, agreement in fraud of or for the purpose of defeating the rights of his wife, Margaret Haverlah; that the business affairs of H. L. Brown & Associates, Inc. were conducted on a fiscal year basis ending May 31st of each year; at the conclusion of each year an audit was made by an independent auditor whose findings were incorporated in the annual statement; that appellee and appellant, Minnie Yelverton, were in disagreement as to the purchase price to be paid by appellee

for the 147 shares of stock; that the last annual statement of the corporation preceding the death of both Margaret and Harry A. Haverlah was that for the fiscal year ending May 31, 1964, and that the appellee exercised his option to purchase the 147 shares within a reasonable time after the death of Harry A. Haverlah.

The court concluded that in absence of fraud or intention to defeat the rights of his wife, Margaret, Harry A. Haverlah had the right and power to bind the community interest of his wife in and to the 147 shares; that on the death of Margaret and Harry A. Haverlah, their respective one-half interests in the 147 shares passed to their respective estates, subject to the contract option in favor of appellee; that neither the death of Margaret or Harry A. Haverlah nor the execution by Harry A. Haverlah of his will making appellee independent executor of his estate and passing said estate to appellee as trustee extinguished the option rights of appellee under the June 15, 1960, contract; that the submission by appellee to Minnie Yelverton of his written notice purporting to exercise his option to purchase said 147 shares was effective for that purpose; that the estates of Margaret and Harry A. Haverlah were both obligated to deliver to appellee the 147 shares upon payment into the registry of the court by appellee of the book value of the 147 shares of stock belonging to the corporation as of May 31, 1964, as shown by the annual audit as of that day.

Appellants' first contention is that the trial court erred in rendering judgment that the appellee, Harry L. Brown, individually, is entitled to purchase the stock involved in this lawsuit. Their sole argument under this assignment of error is that the purchase of said stock by the appellee is in violation of section 352 of the Probate Code of Texas, V.A.T.S. This Article provides in part as follows: "The personal representative of an estate shall not become the purchaser, directly or indirectly, of any property of the estate sold by him, * * *." It further provides that in such event any person interested in the estate could make complaint and upon proof, the court administering the estate would set aside the sale.

■ Appellee, by counter point, contends that appellants are precluded from asserting their first point since it is contrary to an admission in their answer and it does not appear that the issue was raised by the pleadings or otherwise presented to the trial court or tried by the common consent of the parties. We sustain this contention.

■ Appellants allege in their answer that the appellee is entitled to buy said stock. This allegation constituted a judicial admission which is conclusive against appellants. It is the settled law that it is the general rule that the pleadings in a particular case, for the purpose of use as such in that case, are to be regarded as judicial admissions, rather than just ordinary admissions. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, (Tex.Sup., 1941); Hughes v. Fort Worth Nat. Bank, 164 S.W.2d 231, (Tex.Civ.App., Fort Worth, 1942, writ ref.); McCormick v. Stowe Lumber Company, 356 S.W.2d 450, (Tex.Civ.App., Austin, 1962, writ ref., n. r. e.). The only relief sought by appellants was the appointment of an auditor to determine the reasonable cash market value of said stock on the date of the death of Mrs. Haverlah. The court found that the only disagreement between the parties was with respect to the purchase price of the 147 shares of stock. The pleadings of the appellee in the trial court raised no issue about his right to purchase the 147 shares of stock, but invoked the aid of the court only for instructions in respect to the methods and means of effectuating a determination of the full and true value of the 147 shares of stock in controversy by which he may pay therefor the sum of money to which the estate of Harry A. Haverlah and Mrs. Yelverton are justly entitled. Nowhere in the record before this court is it revealed that the provisions of section 352 of the Probate Code were raised in the trial court nor does the findings of fact and conclusions of law made

by the court disclose or indicate that issues involving said section of the Probate Code were raised and litigated in the trial court. We find no pleadings raising an issue of appellants' right to purchase stock in question. To the contrary, the record clearly shows that the appellants in the trial court conceded appellee's right to buy the stock. The issues involving section 352 of the Probate Code were not raised or litigated by the parties in the trial court. So far as this record shows, this contention was not raised in the trial court. The issue cannot be raised for the first time on appeal. State of California Department of Mental Hygiene v. Bank of the Southwest National Association, 354 S.W.2d 576, (Tex.Sup., 1962); Boatner v. Providence-Washington Ins. Co., 241 S.W. 136, (Tex. Com.App., 1922, opinion adopted); Ayoub v. Herold, 287 S.W.2d 539, (Tex.Civ.App., 1956, writ ref., n. r. e.); Hodge v. Ellis, 277 S.W.2d 900, (Tex.Sup., 1955); Clark v. Texaco, Inc., 382 S.W.2d 953, (Tex.Civ. App., Dallas, 1964, writ ref., n. r. e.); Moseley v. Texas and New Orleans Railroad Company, 346 S.W.2d 636, (Tex.Civ. App., Waco, n. r. e.). A reviewing court ordinarily will decline to consider questions not raised in the trial court. Brunson v. Brunson, 372 S.W.2d 761, 764, (Tex.Civ. App., Amarillo, 1963, n. w. h); 4 Tex.Jur. 2d, page 242, Sec. 746 and cases there cited. A case will be tried in the appellate court on the same theory advanced in the trial court. Stacy v. Bridge City Independent School District, 357 S.W.2d 618, (Tex.Civ. App., Beaumont, 1962, n. w. h.).

The Supreme Court of this state in Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238 held:

"* * * The office of a pleading is to define the issues to be tried. It is certainly the general rule that an admission in a pleading, on which a party goes to trial, is taken against him. * * * Finally, it is the rule that parties are restricted in the appellate court to the theory on which the case was tried in the lower court. * * *"

Appellants next complain that "The trial court erred in refusing appellant the right at her own expense to examine the books of H. L. Brown & Associates, Inc., prior to complying or refusing to comply with the request of H. L. Brown as president of H. L. Brown & Associates, Inc., to purchase the stock at its book value." We find in appellants' brief under this point the following statements: "Appellant's position in this case is that she could not intelligently determine the condition of the corporation financially at the time she became the owner of the stock in the corporation or at the date of the making of the financial statement upon which Appellee bases his right to buy the stock. * * * Appellant takes the position that she is entitled under the common law and the Statutes of the State of Texas to examine the books of the corporation before agreeing to sell the stock to Appellee, or what action would be to her best interest, and that this cause should be reversed and Appellee ordered to permit Appellant, her agents and auditors to examine the books of said corporation, * *"

Counsel for appellants in his oral argument before this court stated that Mrs. Yelverton does not contend that appellee does not have the right to buy the stock as per the contract, but she wants an audit of the books to ascertain the value thereof before she determines whether to comply with the request of appellee to purchase the stock. It seems to be apparent that appellants desire only to have an examination or audit of the books and records of the corporation to ascertain the reasonable cash market value of said stock before Mrs. Yelverton is required to sell her half of the 147 shares of stock.

At the special request of appellants, the court found as a fact that while appellee, Harry L. Brown, was testifying on the trial of this cause, appellants' attorney, on cross examination, requested appellee to permit appellant, Minnie Eva Yelverton, at her expense, to examine the books and assets of H. L. Brown & Associates, Inc., which request was denied by the appellee Brown.

Insofar as this record discloses, this matter was not pursued further. The court, though requested by appellants, declined to find as a matter of law that appellants thus became entitled to such examination.

Appellants rely upon Article 2.44 of the Business Corporation Act, V.A.T.S. as authority for their right to examine or have examined the books and records of accounts of the corporation. Section (B) of this article does provide for the right of examination of books, records and accounts of a corporation under certain specified conditions, upon written demand stating the purpose thereof.

The record before us does not reflect that appellants ever made written demand as provided for in Art. 2.44, T.B.C.A., for an examination or audit of the books and records of the corporation. Neither does it show any demand for such examination or audit nor that they were ever refused such examination or audit prior to the trial of this case.

Appellants cite only Texas Infra-Red Radiant Company v. Erwin, 397 S.W.2d 491, (Tex.Civ.App., Eastland, 1965, writ ref., n. r. e.) to support their contention under their second assignment of error. In this suit the complaining party, Mrs. Margaret Erwin, sought a writ of mandamus ordering the defendant corporations, in which she had the beneficial ownership of 10% of the stock, to permit her to inspect their books. As statutory authority for such a writ, she cited Art. 2.44 of the Texas Business Corporation Act.

It has been held in this state that the enforcement of the right of inspection or examination of the books and records of a corporation is by mandamus. Moore v. Rock Creek Oil Corporation, 59 S.W.2d 815, (Tex.Com.App.1933). The court in Texas Infra-Red Radiant Company v. Erwin, supra, also held that mandamus was available remedy to compel corporation to permit beneficial owner of stock to inspect books for proper purposes under Art. 2.44 of the Business Corporation Act.

This court has the benefit only of the pleadings, findings of fact and conclusions of law from which to determine the nature of the suit and issue presented to the trial court. A review of this record reveals that this is not a suit seeking a writ of mandamus to examine or audit the books of H. L. Brown & Associates, Inc. We hold that whatever right appellants may have to an examination or audit of the books and records of account of said corporation, upon refusal of a proper demand to permit such examination, their remedy to compel such examination and audit is by mandamus.

The parties throughout their pleadings refer to "the reasonable cash market value of the stock." From a reading of the June 15, 1960, contract between Harry L. Brown and wife, and Harry A. Haverlah, the validity of which is not contested in this action, we note that it provides: " * * * The *actual book value* of the stock of said corporation shall be determined by the most recent financial statement above required, but the purchase price of any stock sold and purchased under this agreement shall be the value thereof as fixed by the last statement prepared prior to the death of the first of the male stockholders to die * * * however, in calculating the purchase price of any stock sold and purchased under this agreement, actual reasonable market value of any automobiles owned by the corporation, office furniture, fixtures, equipment and supplies, reserve accounts and other tangible personal property belonging to the corporation shall be used (rather than book value of such item), but *book value* as to all other items and assets shall be used. In the event the reasonable cash market value of such particular items mentioned above cannot be agreed upon and determined by the parties to this agreement or their legal representatives, a determination of such reasonable cash market value of such items shall be made by three appraisers, * * *. When such reasonable cash market value of such items particularly mentioned above shall have been determined, such value so arrived at shall

be substituted for the book value of such items for the purpose of determining the then value of the stock of the corporation to be sold and purchased." (Emphasis supplied).

It appears that the instructions to the appellee as set out in the judgment of the trial court directing him as to the proper method and means for determining the purchase price of the 147 shares of stock conform to these provisions of the said contract.

For the reasons above stated, the judgment of the trial court is affirmed.